UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNIVERSITY OF TENNESSEE RESEARCH FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-CV-508-CEA-DCP |
| | ) | |
| CAELUM BIOSCIENCES, INC., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendants' Motion to Compel the Production of the Custodial File of Dr. Maha Krishnamurthy ("Motion to Compel") [Doc. 205]. Plaintiff filed a response in opposition [Doc. 213], and Defendants filed a reply [Doc. 217]. Subsequently, Plaintiff filed a supplemental brief [Doc. 220] given that the parties took Dr. Krishnamurthy's deposition after briefing Defendants' motion. Defendants have responded to the supplemental brief [Doc. 227 SEALED].[1] Thus, the motion is ripe for adjudication. For the reasons set forth below, the Court **GRANTS** Defendants' motion [**Doc. 205**].

## I. BACKGROUND

On April 22, 2021, Plaintiff identified Dr. Krishnamurthy in its initial disclosures, stating as follows:

> Dr. Krishnamurthy is likely to have information regarding: (i) negotiations relating to the potential amendment of the Inter-

---

[1] Defendants filed a motion to seal [Doc. 227] and the exhibits thereto [Docs. 227-1 – 227-7]. The Court, however, ordered the parties to supplement the motion to seal because they did not sufficiently explain why the documents should be sealed [Doc. 234].

Institutional Agreement between UTRF and Columbia Technology Ventures; (ii) the termination of the Inter-Institutional Agreement between UTRF and Columbia Technology Ventures; (iii) UTRF's ownership of all right, title and interest, including property rights and all know-how relating to the synthesizing and use of, the 11-1F4 antibody; and (iv) UTRF's licensing agreements with third parties relating to UTRF's trade secret technologies and the reasonable royalties provided for thereunder.

[Doc. 213-5 p. 5]. Later, on August 10, 2021, The Trustees of Columbia University in the City of New York ("Columbia") identified Dr. Krishnamurthy in its initial disclosures [Doc. 213-7 p. 5]. In January 2022, the parties filed a proposed order governing the discovery of electronically stored information ("ESI"), which the Court entered on January 27, 2022 ("ESI Order") [Doc. 131]. Relevant to the instant matter, the parties agreed as follows:

> 5. The Parties will meet and confer to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. Each party is responsible for identifying, at the outset, relevant custodial files within their possession, custody or control. The foregoing does not preclude a request for additional custodians.

> 6. Each requesting party shall limit its custodial file production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

[*Id.* ¶¶ 5–6].

The parties participated in a meet and confer regarding search terms and custodians on March 3, 2022, and they exchanged follow up letters dated March 22, 2022, regarding their proposals [Docs. 205-3, 213-3, and 213-4]. Specifically, Plaintiff proposed that Caelum Biosciences, Inc. ("Caelum") collect files from five custodians, that Columbia collect files from six custodians, and it identified four of its custodians: (1) Dr. Patrick Reynolds ("Dr. Reynolds"),

(2) Dr. Debbie Smith ("Dr. Smith"), (3) Mary Ann Warwick Russell ("Russell"), and (4) Dr. Stacey Patterson ("Dr. Patterson") [Doc. 205-3]. Columbia and Caelum each proposed to search four custodians [Docs. 213-3 and 213-4].[2] In a letter dated June 13, 2022, Plaintiff stated that it no longer had Dr. Reynolds's custodial file and that it was still determining whether it had possession, custody, or control of Dr. Smith's file [Doc. 205-4]. The following day, on June 14, 2022, counsel for Columbia requested that Plaintiff "identify three additional . . . custodians who have relevant files in their possession, custody, or control, in accordance with the ESI Order, or respond that no such additional custodians exist" [Doc. 205-5].

On June 23, 2022, the parties participated in a meet and confer, and Plaintiff's counsel agreed to talk to Plaintiff to see if additional custodians existed [Doc. 205-6 p. 11]. Plaintiff indicated that it would provide an update on additional custodians the week of July 6, 2022 [*Id.* at 7]. On July 8, 2022, in relation to setting depositions, counsel for Caelum stated, "With respect to the depositions that Caelum intends to take, [Plaintiff] is obligated to identify and produce 5 custodians, and to date has only identified 2" [*Id.* at 2]. Plaintiff responded the same day, denying that it had an obligation to produce five custodial files, citing the ESI Order [*Id.* at 1]. Plaintiff agreed, however, to produce the following custodian files: (1) Dr. Patterson, (2) Dr. Smith, (3) Ms. Russell, (4) Dr. Alan Solomon ("Dr. Solomon"), and (5) Jonathan Wall ("Dr. Wall") [*Id.*].

The parties do not dispute that Plaintiff only produced the custodian files of Dr. Patterson and Ms. Russell [Doc. 213 p. 14]. Caelum served a subpoena on the University of Tennessee ("UT") on August 29, 2022, and in its response, dated September 16, 2022, UT produced files for Dr. Smith and Dr. Wall [Doc. 205-7]. UT did not, however, have files for Dr. Solomon, Dr.

---

[2] Defendants state that they each identified five custodial files for their respective clients [Doc. 205-1 p. 5]. Plaintiff states, "Defendants only later agreed to produce custodial records for five custodians after additional meet and confer efforts" [Doc. 213 p. 7].

Reynolds, and Rudi Hrcic, and it requested a meet and confer on Caelum's request for Anthony Ferrara's files [*Id.* at 2]. The deadline for document production expired on September 13, 2022 [Doc. 181].

On October 6, 2022, the parties deposed Dr. Patterson [Doc. 207-2].[3] According to Defendants, "it became apparent through Dr. Patterson's deposition that Dr. Krishnamurthy is an important witness who will have relevant and necessary testimony" [Doc. 205-1 p. 6]. Defendants claim that Dr. Patterson recused herself from this case and has relied on Ms. Russell, a staff attorney, and Dr. Krishnamurthy to manage this litigation for Plaintiff [*Id.*]. In addition, according to Defendants, Dr. Patterson's testimony further revealed that Dr. Krishnamurthy was directly involved (1) in the agreements between Plaintiff and Columbia, (2) in the proposed amendment to Plaintiff and Columbia's agreement, along with the subsequent termination thereof, and (3) UT's research agreement with Dr. Wall [*Id.*]. She was also responsible for preparing the May 2018 summary update to Plaintiff's Board of Directors [*Id.*].

Based on this testimony, in a letter dated October 10, 2022, counsel for Columbia requested that Plaintiff produce documents from Dr. Krishnamurthy's custodial file, citing the ESI Order, and outlining the parties' communications regarding the production of custodian files [Doc. 205-8]. On the same day, Plaintiff declined, outlining its arguments as to why it was not obligated to produce the file [Doc. 205-9].

Defendants have now moved for an order compelling Plaintiff to produce Dr. Krishnamurthy's custodial file. They assert that Plaintiff had the obligation to identify five relevant custodians, and they argue that Dr. Krishnamurthy's file contains relevant information in light of Dr. Patterson's testimony.

---

[3] This deposition is sealed [Doc. 207-2 SEALED].

Plaintiff responds that Defendants received six custodial files, including the files of Dr. Patterson, Ms. Russell, Dr. Wall, Dr. Solomon, and Anthony Ferrara, either through it or UT.[4] Citing the September 13, 2022, deadline to complete document production, Plaintiff asserts that Defendants' motion is untimely, and they have failed to explain why they waited nearly a month and half after Dr. Patterson's deposition to file their motion. Based on the discovery already exchanged, including initial disclosures, Plaintiff asserts that Defendants were well aware of Dr. Krishnamurthy years ago. In addition, Plaintiff states that Defendants' understanding of the ESI Order is misplaced, but in any event, they have received the production of six custodial files. While Plaintiff acknowledges that Dr. Krishnamurthy is in possession of certain limited relevant information to the case, it argues that the ESI Order supports the parties' contemplation that there would be some witnesses with relevant information whose custodial files would not be produced. Plaintiff states, "Dr. Krishnamurthy perfectly fits the description of the type of witness whom the [p]arties contemplated would possess some relevant information, but not enough to justify the burden of collecting, searching, and producing the complete custodial file" [Doc. 213 p. 17].

The parties' supplemental briefs [Doc. 220 and Doc. 227] relate to Dr. Krishnamurthy's deposition testimony and whether she has considerable knowledge about the facts of this case.

## II. ANALYSIS

After considering the parties' briefs, the Court finds Defendants' request well taken, and the Court will order Plaintiff to produce Dr. Krishnamurthy's custodial file.

At the heart of this dispute is the parties' ESI Order [Doc. 131]. Plaintiff argues that it creates a cap on custodial files that needed to be produced, while Defendants assert that it contains a five-custodian requirement. At the outset, the Court acknowledges that each party's

---

[4]     Dr. Solomon produced documents in response to an individual subpoena [Doc. 213 p. 14].

interpretation of the ESI Order has support. Specifically, as mentioned above, the ESI Order states as follows:

> 5. The Parties will meet and confer to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. Each party is responsible for identifying, at the outset, relevant custodial files within their possession, custody or control. The foregoing does not preclude a request for additional custodians.

> 6. Each requesting party shall limit its custodial file production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

[*Id*. ¶¶ 5–6]. The Court finds that the most reasonable interpretation is that each party would produce a list identifying relevant custodial files within their custody, control, possession [*Id*. ¶ 5]. It appears that the parties expected this list to be more than five witnesses in light of the first sentence in paragraph 6. *See also* [Doc. 213 p. 16 ("The [p]arties clearly contemplated there would be witnesses with some relevant information whose custodial files would not be produced.")]. Next, the parties would review each other's list that identified the relevant custodial files, and the requesting party could request up to five custodian files from that list, even though the list may have included more than five custodians [Doc. 131 ¶ 6 ("Each requesting party shall limit its custodial file production requests to a total of five custodians per producing party . . .")). In the event there were disputes, meaning that the requesting party wanted more than five custodial files or the producing party declined to produce five custodian files, the parties could bring the matter to the Court's attention [*Id*.]. Thus, stated in a different way, it appears to the Court that if the requesting party wanted five custodial files, the producing party would comply, although the ESI

Order allowed for motion practice if the requesting party wanted more or if the producing party wanted to produce less, and the parties were otherwise unable to agree to a joint modification.

The first problem is that Dr. Krishnamurthy is not on Plaintiff's original identifying list— that is, the list identifying the relevant custodial files that were in its custody, control, and possession [*Id.*]. Dr. Krishnamurthy, however, was listed in Plaintiff's initial disclosures [Doc. 213-5]. Using only the criteria in paragraph 5, it seems as though Plaintiff should have identified Dr. Krishnamurthy in accordance with paragraph 5 of the ESI Order. But, for whatever reason, she was not.

Second, on June 14, 2022, the parties should have realized that they interpreted the ESI Order differently as that is when Columbia's counsel requested three additional custodians, per the ESI Order [Doc. 205-5]. Plaintiff indicated it would provide an update on additional custodians, but on July 8, 2022, denied that it was under an obligation to produce additional custodial files, also citing to the ESI Order [Doc. 205-6]. In any event, Plaintiff agreed to provide a total of five custodial files. Ultimately, Plaintiff only produced two custodial files, Dr. Patterson and Dr. Russell, and the deadline for document production expired on September 13, 2022, meaning the parties began the deposition phase in this case.[5]

On October 6, 2022, the parties took Dr. Patterson's deposition. Defendants assert, "[I]t became apparent that Dr. Krishnamurthy is an important witness who will have relevant and necessary testimony" [Doc. 205-1 p. 6]. Defendants claim that "Dr. Patterson recused herself from this case and has relied on Ms. Russell (the staff attorney) and Dr. Krishnamurthy (Vice President)

---

[5] Plaintiff asserts in its brief that Defendants received six custodial files. But Defendants received the other custodial files in response to a subpoena they served on UT, meaning that such files were not in Plaintiff's possession, control, or custody as contemplated under the ESI Order [Doc. 131 ¶¶ 5–6]. Such is also consistent with Plaintiff's previous representation to the Court that it "does not possess and control UT's documents" because they are "separate entities" [Doc. 174 p. 42].

to manage this litigation for [Plaintiff]" [*Id*.].  Defendants further claim she was involved in agreements between Plaintiff and Columbia, negotiations of an unexecuted amendment to Plaintiff and Columbia's agreement, and UT's research agreement with Dr. Wall [*Id*.].  Finally, Defendants claim that Dr. Krishnamurthy was also responsible for preparing the May 2018 summary update to Plaintiff's Board of Directors [*Id*.].

"Plaintiff acknowledges that Dr. Krishnamurthy is in possession of certain limited information relevant to the case" [Doc. 213 p. 16].  But it asserts, "Dr. Krishnamurthy perfectly fits the description of the type of witness whom the [p]arties contemplated would possess some relevant information, but not enough to justify the burden of collecting, searching, and producing a complete custodial file" [*Id*. at 17].  It argues that "the record shows that Dr. Krishnamurthy had some limited involvement as a supervisor of the licensing personnel who handled negotiations of the agreement at issue in this case" [*Id*. at 18].  Dr. Patterson confirmed, according to Plaintiff, that Dr. Krishnamurthy is managing outside counsel, along with Ms. Russell, and Plaintiff has already produced Ms. Russell's custodial file.  Plaintiff adds that "the majority of Dr. Krishnamurthy's work overseeing outside counsel's handling of active litigation is privileged" [*Id*.].  Finally, Plaintiff argues that Defendants have, and will have, significant discovery from Dr. Krishnamurthy.  For instance, Plaintiff states that Defendants produced 121 documents that contain Dr. Krishnamurthy's name or email address, while Plaintiff and UT produced 176 documents [Doc. 213-1 ¶¶ 21–22].  In addition, Plaintiff submits Defendants were willing to continue with Dr. Krishnamurthy's deposition despite their instant motion.

As mentioned above, the supplemental briefs [Doc. 220 and Doc. 227 SEALED] relate to Dr. Krishnamurthy's deposition, which occurred after the parties briefed Defendants' motion. Plaintiff asserts that her deposition only confirms that she is not an important witness and that she

only played a limited, tangential role. Specifically, Plaintiff states that Dr. Krishnamurthy testified that she has only spent about five or six hours on tasks relating to the antibody. "Of the eighteen exhibits Defendants entered during the Dr. Krishnamurthy's deposition," Plaintiff states, "two were largely irrelevant documents, partially authored by Dr. Krishnamurthy; one was an e-mail authored by Dr. Krishnamurthy; one was an e-mail on which Dr. Krishnamurthy was a direct recipient; and the other fourteen almost exclusively consisted of e-mails on which Dr. Krishnamurthy was simply copied (or not even copied) and of which she had limited or no recollection" [Doc. 220 p. 3].

Plaintiff submits that Dr. Krishnamurthy's main role consists of managing the litigation along with Ms. Russell [*Id*. at 4]. As a result, Plaintiff submits, Dr. Krishnamurthy's custodial file likely consists of privilege communications. Finally, Plaintiff states that Dr. Krishnamurthy does not have voluminous relevant documents and that Defendants' overbroad proposed search terms captured documents from other custodians.

Defendants paint a different picture after having deposed Dr. Krishnamurthy. Defendants argue that Dr. Krishnamurthy's inability to recall information supports their position that her custodian file should be produced. Defendants submit that Plaintiff's blanket assumption of privilege is insufficient and unsupported by any evidence. Further, Defendants state that Plaintiff agreed to their search terms months ago with respect to other custodians.

It does appear to the Court that Defendants already have some discovery that is contained in Dr. Krishnamurthy's custodian file [Doc. 213-1 ¶¶ 21–22]. In light of Plaintiff's acknowledgement, however, that she does have relevant knowledge about this case, albeit limited, the Court finds the production of her custodial file warranted. *See* Fed. R. Civ. P. 26(b). While Plaintiff asserts that her relevant knowledge is not enough to justify the burden of collecting,

searching, and producing a complete file, it does not sufficiently explain how burdensome this process will be in order for the Court to make such a finding. Thus, given that Plaintiff did not identify Dr. Krishnamurthy as a relevant custodian, Defendants have repeatedly requested five custodian files with Plaintiff having only produced two, and Dr. Krishnamurthy has some relevant information, the Court finds the production of her custodial file warranted.

Plaintiff states, however, that Defendants' request is untimely because the deadline for document production expired on September 13, 2022, and Defendants filed their motion nearly two months later. As the Court mentioned above, the parties should have realized their interpretations of the ESI Order were different on June 14, 2022. This is when Columbia's counsel requested three additional custodians per the ESI Order [Doc. 205-5]. Later, Plaintiff denied that it was required to produce three additional custodial files per the ESI Order but agreed to do so anyway [Doc. 205-6]. Plaintiff only produced two custodial files and did not initially identify Dr. Krishnamurthy pursuant to the ESI Order [Doc. 131]. Defendants claim that they learned of Dr. Krishnamurthy's importance during Dr. Patterson's deposition testimony, which they took on October 6, 2022. In light of the above, the Court does not find that the timing of the motion is a basis to deny the requested relief. *See Century Indem. Co. v. Begley Co.,* 323 F.R.D. 237, 241 (E.D. Ky. 2018) ("Excusable neglect is a 'somewhat elastic concept' that is 'at bottom an equitable one, taking account of all relevant circumstances.'" (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, (1993))).[6]

---

[6]    The Court does acknowledge that Dr. Patterson's deposition was on October 6, 2022, and Defendants did not file their motion until November 15, 2022. But Defendants sent Plaintiff a letter on October 14, 2022, requesting Dr. Krishnamurthy's file, and Defendants represent that from October 10 to November 15, 2022, the parties attended a court hearing and worked on seven depositions [Doc. 217 p. 10].

Specifically, the Court has considered: "(1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). The Court does not find that there is any prejudice to Plaintiff. While Plaintiff argues that Defendants' motion is an attempt to secure delay, it does not sufficiently explain why producing another file will delay the proceedings. Further, the Court further finds that Defendants have explained the reason for the delay, and the Court cannot find that Defendants acted in bad faith. Accordingly, the Court finds Defendants' request well taken.

## III.    CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendants' Motion to Compel the Production of the Custodial File of Dr. Maha Krishnamurthy [**Doc. 205**]. Plaintiff **SHALL** produce Dr. Krishnamurthy's file within **thirty (30) days.** Given that there appears to be a dispute regarding proper search terms, the parties shall meet and confer to determine appropriate search terms and how to prevent any duplicative discovery.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

11