UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNIVERSITY OF TENNESSEE RESEARCH FOUNDATION, <br><br> *Plaintiff*, <br><br> v. <br><br> CAELUM BIOSCIENCES, INC., <br><br> *Defendant*. | Case No. 3:19-CV-00508 (CEA) (DCP) |

**DEFENDANT CAELUM BIOSCIENCES, INC.'S
MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
<u>PRODUCTION OF WITHHELD DOCUMENTS</u>**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................................ 3
II. FACTUAL & PROCEDURAL BACKGROUND............................................................. 4
    A. UTRF Identifies Its Trial Counsel As The Only Person With Knowledge of Its Trade Secrets........................................................................................................ 4
    B. UTRF Improperly Withheld Non-Privileged Draft Agreements ........................... 6
    C. Caelum's Third-Party Subpoena to Mr. Hipskind .................................................. 7
III. ARGUMENT ..................................................................................................................... 9
    A. The Documents Are Not Privileged Attorney-Client Communications ............... 10
    B. UTRFP0908 Is Not Protected From Disclosure By The Work Product Doctrine 11
    C. The Documents Are Subject to Disclosure Because They are Relevant .............. 13
IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Adjose v. Interline Brands, Inc.*, 2016 WL 6893866 (M.D. Tenn. Nov. 23, 2016) ......................... 9

*Adkisson v. Jacobs Eng'rg Grp.*, 2021 WL 149831 (E.D. Tenn. Jan. 15, 2021) ............................ 9

*Doe v. Hamilton Cnty. Board of Ed.*, 2018 WL 542971 (E.D. Tenn. Jan. 24, 2018) ................... 10

*Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211 (6th Cir. 1985). .................... 9, 11

*U.S. v. Krug*, 379 F. App'x 473 (6th Cir. 2010) ............................................................................ 9

*Williams v. CBL & Assocs. Props., Inc.*, 2019 WL 13196903 (E.D. Tenn. Sept. 5, 2019) ...... 9, 11

**Rules**

Federal Rule of Civil Procedure 26(b)(3) ........................................................................................ 9

## I. PRELIMINARY STATEMENT

Caelum brings this motion to compel UTRF's production of certain documents improperly withheld by Plaintiff University of Tennessee Research Foundation ("UTRF") based on attorney-client privilege and the work-product doctrine, including documents identified in UTRF's Privilege Log at line items UTRFP0908 and UTRFP0909.

This is not a trivial or ancillary dispute. The titles of the documents reflected on the Privilege Log suggest that UTRF and its trial counsel engaged in negotiations over the potential "quitclaim assignment" of rights relating to "11-1F4," which is the monoclonal antibody at the heart of this trade secrets case. In other words, it appears that UTRF discussed assigning its rights to the trade secrets or property at issue in this case with its trial counsel as part of some sort of negotiation. Obviously, negotiations between parties to a transaction cannot involve the provision of legal advice and cannot be shielded from discovery based on privilege assertions. Yet, this is precisely what UTRF has done.

UTRF's concealment of these documents from Caelum is understandable because they help expose UTRF's trade secret claims for what they are: a calculated shakedown. For years, UTRF made no attempt to commercialize and had, in fact, abandoned all efforts to develop the 11-1F4 antibody into a marketable treatment. For this reason, Dr. Alan Solomon of the University of Tennessee ("UT") transferred the 11-1F4 work to Columbia University and then worked with Caelum, which (along with its successors) spent hundreds of millions of dollars on research and FDA approval efforts. Only after these efforts showed promise did UTRF and its trial counsel file this lawsuit in December 2019 at the urging of Dr. Solomon. In response to Caelum's Motion to Dismiss UTRF's Complaint in 2021, UTRF's counsel added a claim for misappropriation of trade secrets and other property. Numerous witnesses, including UTRF's General Counsel, have confirmed that the only person who can explain the factual predicates for the trade secrets at issue

in this case and explain how and when they were first identified is Dan Hipskind, UTRF's trial counsel. The same trial lawyer who appears to have asked UTRF to transfer some sort of property interest to him in exchange for bringing this very case. As such, Caelum intends to file a motion to compel enforcement of a properly-served subpoena upon Mr. Hipskind in the United States District Court for the Central District of California (where he resides).[1]

For purposes of this motion, however, Caelum respectfully requests that this Court: (a) compel UTRF to produce the documents identified at Privilege Log line items UTRFP0908 and UTRFP0909; (b) compel UTRF to produce any other documents that show UTRF's negotiation of any property rights with its trial counsel; and (c) conduct an *in camera* review of those documents, if the Court deems it necessary.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. UTRF Identifies Its Trial Counsel As The Only Person With Knowledge of Its Trade Secrets

UTRF initiated this lawsuit on December 11, 2019 without any mention of "trade secrets" or Tennessee's Uniform Trade Secrets Act ("UTSA"). (Doc No. 1.) After Caelum moved to dismiss on the basis that all UTRF's tort claims were subsumed by the UTSA, UTRF amended its complaint to add a count for violation of the UTSA on March 6, 2020. (Doc. No. 30.)[2]

On June 24, 2021, Caelum served UTRF with its First Set of Interrogatories, including Interrogatory No. 1 asking UTRF to "Identify in list form and Describe with particularity all trade secrets [UTRF] contend[s] Caelum misappropriated." (Doc. No. 142-2.) Upon receipt of UTRF's

---

[1] Caelum intends to request in its Motion to Compel the Deposition of Mr. Hipskind that the California court transfer the motion to this Court pursuant to Federal Rule of Civil Procedure 45(f).

[2] Caelum subsequently moved to dismiss the First Amended Complaint, which was granted in part and resulted in UTRF's filing of the Second Amended Complaint, adding The Trustees of Columbia University as a defendant. (Doc. No. 61.) Caelum and Columbia separately moved to dismiss the Second Amended Complaint. The Court recently granted Columbia's motion, dismissing Columbia from the case, and granted Caelum's motion in part. UTRF's UTSA claim remains active. (*See* Doc. No. 259.)

4

response, Caelum moved to compel UTRF to amend its response to identify its trade secrets with the requisite level of reasonable particularity. (*See* Doc. No. 179, Court Order.) On July 13, 2022, the Court granted Caelum's motion and ordered UTRF to amend its response to list *with particularity* the "trade secrets" UTRF alleges Caelum to have misappropriated. (*Id.*)

Accordingly, UTRF served its amended response to Interrogatory No. 1 on August 12, 2022. Therein, UTRF listed 41 separate "trade secrets" which it contends Caelum to have misappropriated. (Doc. No. 182-3.) Caelum inquired about UTRF's allegations of "trade secrets" with several of UTRF and University of Tennessee's fact witnesses during depositions. None had any knowledge of the factual predicates underlying UTRF's purported trade secret claims, when they were first recognized as trade secrets by UTRF, or how the trade secrets in the interrogatory answers were even identified. (*See* Finger Decl. Exs. A (Patterson Tr. 34:1-13, 267:14-21), B (Krishnamurthy Tr. 55:2-56:20), C (Wall Tr. 89:2-7, 102:3-17, 146:1-148:21). Former UTRF President Dr. Stacey Patterson testified that UTRF General Counsel Ms. Mary Ann Russell would be able to identify the trade secrets that UTRF contends Caelum misappropriated (Finger Decl. Ex. A, Patterson Tr. 267:8-11). This made sense since UTRF designated Ms. Russell to testify on this subject and she also verified UTRF's First Supplemental Responses to Caelum's First Set of Interrogatories, which listed the "trade secrets" as required by the Court's order. (Finger Decl. Ex. D.)

But Ms. Russell was unable to provide meaningful answers to questions at her deposition about UTRF's supplemental response to Interrogatory No. 1 (i.e., UTRF's "trade secrets"). Rather, Ms. Russell testified that UTRF's trial counsel, Mr. Hipskind, was the only person who could explain what facts, if any, supported UTRF's contention that the 41 items amounted to trade

5

secrets. (*See, e.g.*, Finger Decl. Ex. D, Russell Tr. At 77:8-10, 78:2-19, 84:18-85:4, 137:20-139:23).

B. **UTRF Improperly Withheld Non-Privileged Draft Agreements**

On January 26, 2023, UTRF served its Supplemental Privilege Log in connection with its production of UTRF's former Vice President and now Acting President Dr. Maha Krishnamurthy's custodial file, as ordered by the Court on December 15, 2022 (ECF No. 235.) (Finger Decl. Ex. E, the "Privilege Log.") This motion relates to two documents withheld as privileged that are reflected on the Privilege Log:

| Doc. Control No. | Privilege Type | Privilege Description | SortDate | SubjectTitle | Record Type | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| UTRFP0908 | Attorney-Client Privilege; Work Product Privilege | Attachment to attorney-client communication regarding prefiling analysis | 10/14/2019 | 2019 10 14 11-1F4 Quitclaim Assignment BH.docx | Word | | | | | UTRF |
| UTRFP0909 | Attorney-Client Privilege | Attachment to attorney-client communication regarding retention of outside counsel | 10/14/2019 | 2019 10 14 Draft BH Retention Agreement re Caelum Case.docx | Word | | | | | UTRF |

These documents are listed as "attachments" to the "attorney-client communication regarding prefiling analysis" identified on the Privilege Log at UTRFP0907.

The Privilege Log reflects that Mr. Hipskind first began communicating with UTRF in connection with the "Solomon Case" in February 2018. (Finger Decl. Ex. E at UTRFP0821.) The supposed draft agreements which have been withheld and form the basis of this Motion are, according to the Privilege Log, dated October 14, 2019—over one year prior to Mr. Hipskind's initial communication with UTRF relating to Dr. Solomon, but only two months prior to UTRF's initiation of this litigation. (Finger Decl. Ex. E at UTRFP0908-909.)

On April 28, 2023, Caelum sent a letter to UTRF requesting explanation for its assertion of privilege on the documents identified at lines UTRFP0908 and UTRFP0909. In its letter, Caelum explained that the document titles and descriptions "reflect the exchange of agreements or draft agreements between counterparties," and "suggest that UTRF may not own all of the rights it claims to hold in this case." (Finger Decl. Ex. F.)

6

On May 5, 2023, UTRF responded via letter advising that UTRF's counsel had "re-reviewed the privilege log" and that UTRFP0908 and UTRFP0909 "are both privileged documents and were accurately logged." (Finger Decl. Ex. G.) Counsel confirmed in the letter that UTRF would not produce the documents. (*Id.*)

On May 9, 2023, counsel for the Parties met and conferred via teleconference on the issue. (Finger Decl. ¶ 10.) During the call, Caelum reiterated its concern that the titles of the withheld documents suggest that an interest in the "trade secrets" or materials at issue in this case have been assigned or otherwise conveyed, in whole or in part, to UTRF's counsel. (*Id.*) Counsel for UTRF stated that the documents were privileged because they were attached to an email communication between counsel and UTRF "regarding prefiling analysis." (*Id.*) Although UTRF's counsel confirmed his understanding that attachments to privileged communications are not automatically privileged, he declined to provide any independent basis for asserting privilege over the attachments. (*Id.*) UTRF's counsel further declined to provide any description of the documents beyond the titles listed on the Privilege Log. (*Id.*) UTRF's counsel confirmed only that (1) the documents were draft agreements that were never executed; and (2) counsel was a counterparty to those draft agreements from UTRF. (*Id.*) Nevertheless, UTRF's counsel maintained that UTRF would not produce the documents. (*Id.*)

C. **Caelum's Third-Party Subpoena to Mr. Hipskind**

On May 1, 2023, Caelum served a subpoena to Mr. Daniel Hipskind for deposition and production of certain documents including the privileged documents at issue herein and other documents and communications relating thereto. (Finger Decl. Ex. H.) The subpoena also seeks production of "All non-privileged Documents and Communications related to the factual predicates underlying UTRF's identification of the purported trade secrets set forth in UTRF's

7

Objections and First Supplemental Responses to Caelum Biosciences, Inc.'s First Set of Interrogatories, dated August 12, 2022." (*Id.*)

Although Caelum has not yet received written objections, Mr. Hipskind has written that "this subpoena is improper and inappropriate." (Finger Decl. ¶13.) The Parties have agreed that written objections to the subpoena shall be due May 22, 2023, and any applicable motions to compel and/or motions to quash shall be due June 2, 2023. Caelum has sought this Court's approval of the Parties' stipulated amendment to the schedule, as well as proportionate extension of subsequent deadlines (which UTRF opposes). (*See* Caelum's Mot. to Amend Scheduling Order, Doc. 264.)

Accordingly, Caelum intends to file a Motion to Compel in the United States District Court for the Central District of California, which is the federal district court where compliance with the subpoena is required under Federal Rule of Civil Procedure 45. Caelum will seek Mr. Hipskind's testimony relating to, among other things:

1. Who identified the "trade secrets" UTRF identified in response to Interrogatory No. 1 (as ordered by the Court);
2. When and how those "trade secrets" were identified;
3. The factual predicates that support the allegation those "trade secrets" are protectable under the UTSA;
4. Whether Mr. Hipskind and/or Berger & Hipskind LLP has acquired any interest in the "trade secrets" or any other material, property, or rights at issue in this case; and
5. Whether UTRF or University of Tennessee ever regarded the "trade secrets" as protectable, proprietary trade secrets prior to their trial counsel's drafting of the written response to Interrogatory No. 1.

As part of that motion, Caelum will request that the motion be transferred to this Court pursuant to Federal Rule of Civil Procedure 45(f).

**III.     ARGUMENT**

Through this motion, Caelum challenges UTRF's claim that it has met its burden to establish that UTRFP0908 and UTRFP0909 are protected from disclosure by the attorney-client privilege, and that UTRFP0908 is further protected from disclosure by the work-product doctrine. "Where a party seeks to withhold otherwise discoverable information under a claim of privilege or the work-product doctrine, the withholding party must expressly assert the claim and 'describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Adkisson v. Jacobs Eng'rg Grp.*, 2021 WL 149831, at *3 (E.D. Tenn. Jan. 15, 2021). "The party withholding items under a claim of privilege or the work-product doctrine bears the burden of establishing the item should be withheld." *Id.* (quoting *Adjose v. Interline Brands, Inc.*, 2016 WL 6893866, at *1 (M.D. Tenn. Nov. 23, 2016)).

The attorney-client privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *U.S. v. Krug*, 379 F. App'x 473, 478 (6th Cir. 2010) (applying Tennessee law where the federal Court's jurisdiction arises from diversity under 28 U.S.C. § 1332 (*see also Adkisson*, 2021 WL 139831, at *3)). "In general, the fact of legal consultation or employment, clients' identities, attorney's fees, and the scope and nature of employment are not deemed privileged." *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985). For instance, "inside and outside of this circuit—retainer letters do *not* warrant protection from public disclosure." *Williams v. CBL & Assocs. Props., Inc.*, 2019 WL 13196903, at *1 (E.D. Tenn. Sept. 5, 2019) (collecting cases) (emphasis in original).

The work-product doctrine, as codified in Federal Rule of Civil Procedure 26(b)(3), protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." The work-product doctrine

9

serves to protect "two types of information: (1) opinion work product, *i.e.*, material reflecting the attorney's mental processes, impressions, opinions, or legal theories; and (2) fact work product, *i.e.*, the written or oral information transmitted to the attorney and recorded as conveyed by the client." *Doe v. Hamilton Cnty. Board of Ed.*, 2018 WL 542971, at *3 (E.D. Tenn. Jan. 24, 2018) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Work-product protection is waived where "the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege." *Doe*, 2018 WL 542971, at *4.

### A. The Documents Are Not Privileged Attorney-Client Communications

In the Privilege Log, UTRF asserts that UTRFP0908 and UTRFP0909 are protected by the "Attorney-Client Privilege."[3] Neither constitute attorney-client communications subject to the privilege. UTRFP0908 is titled "2019 10 14 11-1F4 Quitclaim Assignment_BH.docx." (Finger Decl. Ex. E.) UTRFP0909 is titled "2019 10 14 Draft BH Retention Agreement re Caelum Case.docx." (Finger Decl. Ex. E.) The only further description of the documents provided by UTRF's Privilege Log is identical for both: "Attachment to attorney-client communication regarding prefiling analysis." (*Id.*) During the May 9, 2023 meet-and-confer, upon inquiry by Caelum's counsel for a more detailed explanation of UTRF's basis for withholding the documents, UTRF's counsel, Mr. Hipskind, reiterated that the documents are privileged because they are "attached to an email communication between counsel and UTRF "regarding prefiling analysis." (Finger Decl. ¶10.) Mr. Hipskind also confirmed, though, his understanding that application of privilege to an attorney-client e-mail communication does not automatically extend privilege to attachments. (*Id.*) He declined to provide any other basis for the assertion of privilege. (*Id.*)

---

[3] UTRF does not assert the work-product doctrine as grounds for withholding UTRFP0909.

UTRF has not met its burden to establish privilege. First, the Privilege Log does not indicate that UTRFP0908 or UTRFP0909 reflect legal advice from an attorney to the client. To the contrary, the descriptions (which UTRF's counsel confirmed are accurate) state that each is a proposed written agreement between Mr. Hipskind and UTRF. Consequently, UTRF is by definition a counterparty to those agreements with its counsel, Berger & Hipskind LLP (e.g., "BH" in the title of UTRFP0908). It is well settled that privilege does not allow for the withholding of contracts to which counsel and client are counterparties and that reflect the identity of the client, nature or scope of representation, and fees or compensation for same. *See Humphreys, Hutcheson & Moseley*, 755 F.2d at 1219; *see also Williams*, 2019 WL 13196903, at \*1. Because UTRF cannot satisfy its burden to demonstrate that UTRFP0908 and UTRFP0909 are privileged attorney-client communications, the Court should compel production of those documents and any other documents that show UTRF's negotiation of any property rights with its trial counsel.

### B. UTRFP0908 Is Not Protected From Disclosure By The Work Product Doctrine

UTRF also asserts "Work Product Privilege" as grounds for withholding UTRFP0908 (but not UTRF0909) in the Privilege Log. Again, UTRFP0908 is titled "2019 10 14 11-1F4 Quitclaim Assignment_BH.docx." This description does not remotely suggest that any mental opinions or legal theories of UTRF's counsel, or facts conveyed by UTRF to its counsel in anticipation of litigation or in preparation for trial are contained in this document. Instead, it appears to be a "quitclaim" contract, i.e., an assignment or transfer of interest or rights in certain property or material between two parties. Those parties, here, appear to be UTRF and "BH," i.e., Berger & Hipskind LLP—UTRF's trial counsel.

But even if the document were otherwise protected from disclosure by the work-product doctrine, UTRF has waived any such protection by squarely placing at issue Mr. Hipskind's knowledge of the factual predicates forming the basis of UTRF's claim under the UTSA. UTRF

11

and UT deposition testimony has revealed that Mr. Hipskind is the only person who can answer questions about the factual basis for UTRF's response to Caelum's Interrogatory No. 1, identifying the "trade secrets" which UTRF alleges Caelum to have misappropriated. (*See, e.g.*, Finger Decl. Exs. A (Patterson Tr. 34:1-13, 267:14-21), B (Krishnamurthy Tr. 55:2-56:20), C (Wall Tr. 89:2-7, 102:3-17, 146:1-148:21), D (Russell Tr. 77:8-10, 78:2-19, 84:18-85:4, 137:20-139:23).) To date, UTRF has withheld any discussion of the factual basis for its UTSA claim on the grounds that it is protected by the attorney-client privilege. Further, UTRF's General Counsel, Ms. Russell, maintained throughout her deposition that she could not testify as to why UTRF contends any of the items listed in response to Caelum's Interrogatory No. 1 are UTRF's trade secrets because that information would be privileged. Ms. Russell was questioned with respect to each of the 41 "trade secrets" listed in UTRF's interrogatory response (which Ms. Russell verified). Yet, for example, she testified:

> **Q:** But who performed the analysis as to whether these are trade secrets that have been misappropriated?
>
> **A:** Daniel Hipskind and Dorian Berger, our attorneys.
>
> **Q:** And does UTRF possess any information, aside from communications from Berger and Hipskind LLP, attorneys, providing a basis to allege that numbers 1 through 41 are trade secrets that Caelum has misappropriated?
> **A:** UTRF does not.

(Finger Decl. Ex. D, Russel Tr. 325:5-12.)

Accordingly, whether Mr. Hipskind may have negotiated an interest in the "trade secrets" or some material related thereto before asserting the UTSA claim in this lawsuit on behalf of UTRF and before drafting the list of "trade secrets" in response to Interrogatory No. 1, must be disclosed. With respect to UTRFP0908, and any communications or other documents related thereto, any protection afforded by the work-product doctrine has been therefore waived. The Court should

compel UTRF to produce the document identified on UTRF's Privilege Log at line item UTRFP0908, and any other documents that show UTRF's negotiation of any property rights with its trial counsel.

### C. The Documents Are Subject to Disclosure Because They are Relevant

It is indisputable that the documents listed at UTRFP0908 and UTRFP0909 are directly within the scope of relevant discovery in this case. The title of UTRFP0908 specifies that it is an "***11-1F4*** Quitclaim Assignment—referencing the monoclonal antibody around which this entire litigation revolves. Further, the title of UTRFP0909 indicates that it is a "Retention Agreement ***re Caelum Case***." (emphasis added.) But as described in Section B, *supra*, the importance of disclosure of these documents is heightened by the circumstances and other evidence of the case, which suggests that Mr. Hipskind came up with the UTRF's "trade secrets" after negotiating an interest some unknown rights in the very material at issue in this case. Indeed, UTRF's own witnesses could not answer basic questions about the trade secrets. For instance, Dr. Wall, who was designated to testify as to the topic of UTRF's "trade secrets" (in addition to Ms. Russell) stated:

> **Q:** Well, 10 through 15, can you walk us through the factual predicates that support UTRF's contention that these are trade secrets?
>
> **Mr. Hipskind:** Objection, calls for a legal conclusion . . .
>
> **A:** I cannot, no.

(Finger Decl. Ex. C, Wall Tr. 150:16-21.) Instead, the only person with knowledge of the basis of UTRF's "trade secret" claim is its lawyer, Mr. Hipskind. Caelum therefore cannot seek this highly relevant evidence from anyone other than Mr. Hipskind, and this necessarily warrants production of UTRFP0908, UTRFP0909, and any other documents that show UTRF's negotiation of any property rights with its trial counsel.

### IV. CONCLUSION

For the foregoing reasons, Caelum respectfully requests that the Court (a) compel UTRF to produce the documents identified at Privilege Log at line items UTRFP0908 and UTRFP0909; (b) compel UTRF to produce any other documents that show UTRF's negotiation of any property rights with its trial counsel; and (c) conduct an *in camera* review of those documents, if the Court deems it necessary.

Dated: May 16, 2023

| | |
|---|---|
| **DLA PIPER LLP (US)** | **PAINE TARWATER & BICKERS LLP** |
| Christopher M. Strongosky (*pro hac vice*) | By: */s/ John W. Elder* |
| Michael D. Hynes (*pro hac vice*) | John W. Elder (BPR #022775) |
| Anna K. Finger (*pro hac vice*) | Lindsey M. Collins (BPR #033426) |
| Leeanne M. Mancari (*pro hac vice*) | Thomas H. Jarvis (BPR #036835) |
| 1251 Avenue of the Americas, 27th Floor | 900 South Gay Street, Suite 2200 |
| New York, NY 10020 | Knoxville, TN 37902 |
| (212) 335-4500 | (865) 525-0880 |
| christopher.strongosky@us.dlapiper.com | jwe@painetarwater.com |
| michael.hynes@us.dlapiper.com | lmc@painetarwater.com |
| anna.finger@us.dlapiper.com | thj@painetarwater.com |
| leeanne.mancari@us.dlapiper.com | |

*Attorneys for Defendant Caelum Biosciences, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May 2023, I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                                                */s/  John W. Elder*