UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNIVERSITY OF TENNESSEE RESEARCH FOUNDATION, | ) |                           |
|---|---|---|
|                                              | ) |                           |
|                                              | ) | Case No. 3:19-cv-508      |
| *Plaintiff*,                                 | ) |                           |
|                                              | ) | Judge Atchley             |
| v.                                           | ) |                           |
|                                              | ) | Magistrate Judge Poplin   |
| CAELUM BIOSCIENCES, INC.,                    | ) |                           |
|                                              | ) |                           |
| *Defendant*.                                 | ) |                           |
|                                              | ) |                           |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff University of Tennessee Research Foundation's ("UTRF") Motion for Summary Judgment [Doc. 359]. UTRF seeks dismissal of Defendant Caelum Biosciences, Inc.'s ("Caelum") affirmative defenses. For the reasons explained below, UTRF's motion will be **GRANTED IN PART** and **DENIED IN PART**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Discovery disputes are not typically raised in a motion for summary judgment. This case, however, is anything but typical. Even so, the essence of UTRF and Caelum's dispute is straightforward: they disagree as to what ownership rights they each possess in the 11-1F4 monoclonal antibody and associated materials. UTRF seeks summary judgment on Caelum's affirmative defenses because Caelum failed to supplement its response to an interrogatory that sought information regarding the affirmative defenses. [Doc. 361 at 8].[1] To contextualize the nature and substance of UTRF's motion, the Court must summarize this case's procedural history.

---

[1] The record in this case is sizeable and includes hundreds of entries, both sealed and unsealed. For purposes of clarity, record citations are to the CM/ECF-stamped document and page number of each filing, rather than to any internal pagination, e.g. the page number of a deposition transcript.

UTRF filed this action on December 11, 2019. [Doc. 1]. After UTRF amended its complaint twice, Caelum filed a motion to dismiss on June 17, 2021. [Doc. 76]. Discovery continued as Caelum's motion to dismiss remained pending. [Doc. 69]. As part of discovery, UTRF served Caelum with interrogatories on June 30, 2022. [Doc. 444-5]. Interrogatory No. 4 asked Caelum to "[d]escribe in detail each and every basis for your affirmative defenses, including identification of all facts and documents that support or contradict your affirmative defenses, and all persons with knowledge of the same." [*Id.* at 7]. On August 15, 2022, Caelum offered the following response to Interrogatory No. 4:

> Caelum objects to Interrogatory No. 4 as overbroad and unduly burdensome in that it seeks "all facts and documents" and "all persons with knowledge of the same." Caelum further objects to Interrogatory No. 4 as premature given that Caelum's pre-answer Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure remains *sub judice* such that Caelum has not answered the operative complaint, and is not otherwise required to list, provide the bases for, or provide persons with knowledge of, its affirmative defenses. Caelum incorporates by reference the arguments and defenses asserted in its Motion to Dismiss the Second Amended Complaint (ECF Nos. 76-83, 114.) In the event Caelum's Motion to Dismiss is denied, in whole or in part, Caelum will fulfill its obligation to answer the operative complaint and will then assert its affirmative defenses. At that point, Caelum will also supplement its response to Interrogatory No. 4 depending on the affirmative defenses alleged in its Answer. Caelum does not waive any other objections to Interrogatory No. 4.

[Doc. 361-2 at 5–6]. The Court later granted in part and denied in part Caelum's motion to dismiss on March 21, 2023. [Doc. 259]. Caelum filed its answer on April 21, 2023, and asserted 23 affirmative defenses. [Doc. 264 at 36–39]. At that time, just over three weeks remained before the close of discovery. [Doc. 257 at 2]. Discovery closed on May 16, 2023, and Caelum did not supplement its response to Interrogatory No. 4. [*Id.*]. UTRF first raised Caelum's failure to supplement in this motion, which it filed on October 10, 2023, nearly five months after the close of discovery. [Doc. 359]. To date, Caelum has not yet supplemented its response to Interrogatory No. 4. [Doc. 361 at 9]. UTRF's motion is now ripe for the Court's review.

## II. STANDARD OF REVIEW

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Sommer v. Davis*, 317 F. 3d 686, 690 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)). The moving party may satisfy its burden by producing evidence that demonstrates the absence of a genuine issue of material fact or "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. ANALYSIS

UTRF requests summary judgment on Caelum's affirmative defenses for two reasons. First, UTRF contends that Caelum's failure to supplement its interrogatory response triggers discovery sanctions—namely, an order precluding Caelum from relying on its affirmative defenses in this motion or at trial. [Doc. 361 at 11–15]. Second, even assuming Caelum complied with its discovery obligations, UTRF argues that each of Caelum's affirmative defenses fails on the merits. [*Id.* at 16–32]. The Court will address the discovery dispute first and then turn to the merits of Caelum's affirmative defenses.

### A. Caelum's Discovery Obligations

UTRF's discovery argument implicates Rules 26, 33, and 37 of the Federal Rules of Civil Procedure. The case law creates tension between certain provisions in these three rules. On one

3

hand, Rule 26(e) requires a party to supplement or correct its response to an interrogatory upon learning that the response is incomplete or incorrect. FED. R. CIV. P. 26(e)(1)(A). And Rule 37(c)(1) imposes a sanction for a party's failure to supplement—specifically, the party may not use the information "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The Sixth Circuit has described Rule 37's sanction as "'automatic and mandatory' unless the offending party can show that its nondisclosure was substantially 'justified or harmless.'" *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 668 (6th Cir. 2024) (quoting *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004)). The Advisory Committee Notes to Rule 37 echo this description and characterize the sanction for failure to supplement as "self-executing," without any need for a motion to compel. FED. R. CIV. P. 37(c) advisory committee's note to 1993 and 2000 amendments; *see also Scot May v. Pilot Travel Ctrs. LLC*, No. 2:05-cv-918, 2006 WL 3827511, at *3–4 (S.D. Ohio Dec. 28, 2006) (discussing the 1993 and 2000 Advisory Committee Notes).

This language in Rules 26(e) and 37(c)(1) seems to justify only one outcome: Caelum, having failed to supplement its response to Interrogatory No. 4, is precluded from relying on its affirmative defenses in this motion or at trial. The outcome is not so simple, however, due to Federal Rule of Civil Procedure 33. Rule 33 governs interrogatories and provides as follows: "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). Rule 33(b)(3) thus confirms the responding party's right to object to an interrogatory. Indeed, "a party who reasonably perceives a discovery request from the opposing party as too broad or too vague to comply with may object to the request and seek clarification from the opposing party and the district court." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 457 (6th Cir. 2008).

4

Case 3:19-cv-00508-CEA-DCP Document 626 Filed 08/19/24 Page 4 of 20 PageID #: 33382

Though it involved review of the district court's denial of a Rule 60(b) motion, the Sixth Circuit's decision in *Info-Hold* offers critical guidance as to the effect of an objection to a discovery request. Plaintiff Info-Hold and Defendant SMI manufactured message playing devices. *Id.* at 451. As part of its patent infringement suit, Info-Hold served an interrogatory which asked SMI to describe all products it offered and all documents related to such products. *Id.* SMI objected to the interrogatory as overly broad, but, without waiving its objection, SMI nonetheless disclosed that it offers message playing devices and provided certain documents pertaining to its product line.[2] *Id.* Months after providing its interrogatory response, SMI added a new device to its product line. *Id.* at 452. SMI never supplemented its interrogatory response to apprise Info-Hold of the addition. *Id.* at 457–58. Info-Hold asserted that SMI violated discovery obligations based on its failure to supplement. *Id.* at 457.

On these facts, the Sixth Circuit declined to hold that SMI violated any discovery obligation to supplement its interrogatory response. *Id.* at 458. Info-Hold, to be clear, was required to present clear and convincing evidence that SMI deliberately withheld information to prevail on its Rule 60(b) motion. *Id.* Considering this elevated burden, perhaps more important than *Info-Hold*'s ultimate conclusion is its underlying reasoning. Specifically, the Sixth Circuit explained that when SMI objected to Info-Hold's interrogatory as overly broad, "SMI shifted the burden to Info-Hold to either clarify its discovery request or seek an order from the district court directing SMI to comply with Info-Hold's discovery request as originally phrased." *Id.* Info-Hold initially moved to compel a response, but the district court never ruled on the request. *Id.* Given the district court's failure to issue a ruling, along with Info-Hold's failure to renew its motion, it was "not clear" to

---

[2] UTRF contends that the cases Caelum cites, including *Info-Hold*, involve situations "where the responding party served only objections to interrogatories." [Doc. 466 at 8]. As SMI's response makes clear, however, it did not only object to Info-Hold's interrogatory. *Info-Hold*, 538 F.3d at 451. SMI did object, but it also offered some information without waiving its objection. *Id.*

5

the Sixth Circuit that SMI's failure to supplement constituted a violation of its discovery obligations, whether under Rule 26(e) or otherwise. *Id.*

A more recent district court decision reinforces *Info-Hold*'s reasoning. In *Lankford v. Taylor*, the defendants served the plaintiff an interrogatory asking him to identify his anticipated trial witnesses. No. CV-17-2797, 2021 WL 1515504, at *7 (D. Ariz. Apr. 16, 2021). In response, the plaintiff explained that many of his witnesses would likely be fellow inmates, but the plaintiff objected to providing their names on grounds that doing so could expose them to retaliation. *Id.* at *2, *7. The defendants sought to impose Rule 37 sanctions based on the plaintiff's failure to supplement his interrogatory response, even though they never challenged the plaintiff's objection or filed a motion to compel. *Id.* at *1, *7.

Relying on *Info-Hold*, the district court refused to impose sanctions based on the plaintiff's failure to supplement his response. *Id.* at *7. Instead, the district court emphasized the defendants' failure to identify "any case suggesting that a party who objects to an interrogatory, and whose objection goes unchallenged, nevertheless has an ongoing duty of supplementation under Rule 26(e) to supply the very information that is the subject of the standing objection." *Id.* Imposing such a duty, in the district court's view, "would seem to defeat the whole point of raising objections under Rule 33(b)(4)." *Id.* That is, an objection to an interrogatory would serve no purpose if the objecting party was required to disclose the very information it deemed objectionable. *Id.*

Whether Caelum violated its discovery obligations presents a close question. Rules 26(e) and 37(c)(1), when read together, point toward imposing sanctions. On the other hand, Rule 33 and the Sixth Circuit's decision in *Info-Hold* counsel against sanctions. The Court ultimately concludes that Caelum is not subject to Rule 37 sanctions based on a failure to supplement its response to Interrogatory No. 4. *Info-Hold*'s underlying reasoning is unavoidable. Caelum

6

objected to Interrogatory No. 4 as overbroad and unduly burdensome. [Doc. 361-2 at 5]. When Caelum asserted this objection, it "shifted the burden to [UTRF] to either clarify its discovery request or seek an order from the district court directing [Caelum] to comply with [UTRF's] discovery request as originally phrased." *Info-Hold*, 538 F.3d at 458. UTRF never conferred with Caelum regarding its interrogatory response or moved to compel a satisfactory response. Instead, UTRF first raised this issue in its motion for summary judgment, which came nearly five months after the close of discovery. Caelum cannot be sanctioned for failing to supplement its response to an interrogatory to which it asserted an unchallenged objection.

It is true, as UTRF emphasizes, that Caelum expressed an intention to supplement its response to Interrogatory No. 4 upon filing an answer. [Doc. 361-2 at 6]. This component of Caelum's response could render this case somewhat distinguishable from *Info-Hold* and *Lankford*. Still, that Caelum expressed an intention to supplement does not change the fact that it lodged an objection to Interrogatory No. 4. Caelum's objection made clear that it objected to Interrogatory No. 4's requests for all documents supporting its affirmative defenses and all persons with knowledge of the same. [*Id.* at 5–6]. Because UTRF never challenged the objection, Caelum's failure to supplement its response, for the reasons already discussed, does not support the imposition of Rule 37 sanctions.

### B. Caelum's Affirmative Defenses

Having decided against imposing discovery sanctions, the Court must consider the merits of Caelum's affirmative defenses. Caelum originally asserted 23 affirmative defenses, but it withdrew 18 of them in its response brief. [Doc. 480-8 at 6 n.1]. Caelum's remaining affirmative defenses include failure to join an indispensable party, statute of limitations, laches, estoppel, acquiescence, and ratification. [*Id.*]. The Court will address each affirmative defense in turn.

7

### 1. Failure to Join an Indispensable Party

Caelum's first affirmative defense—failure to join an indispensable party—seeks dismissal of UTRF's claims based on its view that Columbia University is a necessary and indispensable party to these proceedings. [*Id.* at 20]. The Court already considered and rejected this argument. Indeed, Caelum filed a motion for judgment on the pleadings as to this issue. [Doc. 353]. The Court denied Caelum's motion and concluded that UTRF's claims could not be dismissed on grounds of Columbia's alleged indispensability. [Doc. 528 at 8]. Considering the Court's prior ruling, Caelum's indispensable party affirmative defense is subject to dismissal.

### 2. Statute of Limitations

Caelum's statute of limitations affirmative defense meets a similar fate. As with the indispensable party defense, the Court already rejected Caelum's statute of limitations argument in an earlier order. The Court specifically deemed UTRF's misappropriation of trade secrets claim timely in its order addressing Caelum's motion for summary judgment. [Doc. 590 at 15–16]. And Caelum has withdrawn its statute of limitations defenses as to UTRF's slander of title claim and now-dismissed breach of contract claim. [Doc. 480-8 at 20 n.3]. Consequently, Caelum's statute of limitations defenses as to these claims are dismissed.

That leaves UTRF's claims for tortious interference and declaratory judgment. Regarding the tortious interference claim, Caelum offers no argument in its response brief as to how this claim is untimely. [*Id.* at 20–23]. Caelum's entire statute of limitations argument focuses on the trade secrets claim and only makes a passing reference to the fact that tortious interference claims are subject to a three-year statute of limitations. [*Id.* at 20]. To the extent Caelum's arguments as to the trade secrets claim apply equally to the tortious interference claim, the Court has already rejected them and sees no reason to reach a different conclusion here.

UTRF's declaratory judgment claims seek declarations that it, rather than Caelum or Columbia, owns all rights in the 11-1F4 antibody and associated materials. [Doc. 61 at ¶ 258–59]. The statute of limitations applicable to a declaratory judgment claim "depends on the nature of the substantive claims sought to be asserted." *Nunn v. Tenn. Dep't of Corr.*, 547 S.W.3d 163, 175 (Tenn. Ct. App. 2017); *see also Int'l Ass'n of Machinists and Aerospace Workers v. TVA*, 108 F.3d 658, 668 (6th Cir. 1997) (noting that the statute of limitations for a declaratory judgment claim depends on the underlying substantive claim). In its response, Caelum purports to reserve a statute of limitations defense as to UTRF's declaratory judgment claims. [Doc. 480-8 at 20 n.3]. Caelum claims it lacks clarity as to what substantive claim underlies UTRF's request for declaratory judgments. [*Id.*]. Setting aside whether Caelum has in fact reserved this defense, it would fail in any event. The Court has already deemed all of UTRF's underlying substantive claims to be timely. Accordingly, as with UTRF's underlying substantive claims, Caelum's statute of limitations defense on the declaratory judgment claims also fails.

### 3. Laches

Closely related to the statute of limitations issue is Caelum's laches affirmative defense. Laches applies in circumstances where a plaintiff exercises unreasonable delay in asserting its claims. *Nunley v. Nunley*, 925 S.W.2d 538, 542 (Tenn. Ct. App. 1996) (citations omitted). The equitable doctrine is designed "to prevent the assertion of stale claims." *Id.* (citing *Parker v. Bethel Hotel Co.*, 34 S.W. 209, 217 (Tenn. 1896)). Laches typically operates to bar claims where no statute of limitations governs, but in certain circumstances, it may apply to preclude a claim even before the applicable statute of limitations expires. *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990). In this latter circumstance, however, there is "a strong presumption that laches will not apply when the analogous statute of limitations has not run, absent

9

compelling reason." *Patton v. Bearden*, 8 F.3d 343, 348 (6th Cir. 1993) (citing *Elvis Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)). And only where the plaintiff is guilty of gross laches will the doctrine apply to bar claims filed within the applicable statute of limitations. *Consumer Credit Union*, 801 S.W.2d at 825.

The parties disagree as to whether gross laches applies to all of UTRF's claims. The source of their disagreement pertains primarily to UTRF's declaratory judgment claims. Before addressing those claims, however, the Court notes that UTRF's remaining claims for misappropriation of trade secrets, slander of title, and tortious interference are all subject to a statute of limitations. Considering the Court already deemed these claims timely, Caelum must demonstrate gross laches to succeed on its affirmative defense. *Id.*

The analysis for UTRF's declaratory judgment claims is slightly more involved. Caelum contends that gross laches cannot apply because the declaratory judgment claims are not subject to a specific statute of limitations. [Doc. 480-8 at 19]. Caelum is correct to say that, in the abstract, declaratory judgment claims are not governed by a specific statute of limitations. But some statute of limitations is always applied to a declaratory judgment claim. *Nunn*, 547 S.W.2d at 175. Which particular statute of limitations governs simply depends on the nature of the claim underlying the request for a declaratory judgment. *Id.* Here, UTRF's declaratory judgment claims, which seek declarations that it owns the 11-1F4 antibody and associated materials, closely track the theories underlying its claim for misappropriation of trade secrets. Both the trade secret and declaratory judgment claims posit that UTRF owns the relevant property and neither Columbia nor Caelum can claim ownership rights based on their purported acquisitions. Because a statute of limitations applies to UTRF's declaratory judgment claims, such as the three-year limit on asserting a trade secrets claim, Caelum must demonstrate gross laches to prevail.

10

Gross laches applies to all of UTRF's claims. To establish gross laches, there must have been a "long and unreasonable acquiescence in adverse rights." *Finova Cap. Corp. v. Regel*, 195 S.W.3d 656, 660 (Tenn. Ct. App. 2005) (quoting *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 46 (Tenn. 1986)). "Further, gross laches requires prejudice to the defendant such as the loss of evidence and witnesses or a considerable accumulation of interest resulting from the unjustified delay of the plaintiff." *Id.* (citing *Dennis Joslin Co. v. Johnson*, 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003)). Caelum advances numerous arguments to demonstrate gross laches, but none of them prove persuasive.

Caelum's first argument emphasizes the investments it made after entering into its license agreement with Columbia on January 1, 2017.[3] [Doc. 480-8 at 25–26]. After securing the license, Caelum began to negotiate with UTRF regarding a confidentiality agreement. [*Id.* at 25]. Caelum claims that during these negotiations, UTRF never raised concerns about the license and Caelum's acquisition of the 11-1F4 technology. [*Id.*]. Subsequently, Caelum invested hundreds of millions of dollars into its projects and later pursued clinical trials. [*Id.*]. These actions, according to Caelum, demonstrate a change in its position following UTRF's silence. [*Id.*].

Caelum's account tends to show it did expend significant resources as UTRF remained silent. Tennessee case law, however, "indicates that economic injury, without some accompanying injury or prejudice to the defendant's ability to defend against the lawsuit, is not sufficient to invoke the doctrine of gross laches." *Assocs. Asset Mgmt., LLC v. Blackburn*, No. W2016-00801-COA-R3-CV, 2017 WL 1077060, at *6 (Tenn. Ct. App. Mar. 22, 2017). Caelum's investment of time and money may establish economic injury, but that type of harm is insufficient standing alone. *Riggan v. Askew*, No. 02A01-9511-CH-00246, 1997 WL 675462, at *6–7 (Tenn. Ct. App. Oct. 29,

---

[3] Caelum technically raises this argument while assuming that laches, rather than gross laches, applies to UTRF's claims. [Doc. 480-8 at 24–25]. Nevertheless, the Court will address this argument as applied to gross laches as well.

11

1997) (affirming trial court's rejection of gross laches defense where the plaintiff's delay caused substantial interest to accumulate on the outstanding loan, but the defendant otherwise failed to demonstrate how his defense was prejudiced by the delay).

Caelum's remaining arguments focus more directly on the prejudice it has allegedly suffered. Caelum highlights that UTRF's claims all stem from Dr. Solomon's work, which began more than thirty years ago. [Doc. 480-8 at 26]. Moreover, according to Caelum, UTRF failed to protect its intellectual property for decades. [*Id.*]. That Dr. Solomon's decades-old work forms the basis of UTRF's claims does not demonstrate any prejudice to Caelum. "The defense of laches requires an inexcusably long delay in commencing the action which causes prejudice to the other party." *Patton*, 8 F.3d at 347. Logically, delay cannot be attributed to a plaintiff for failing to commence an action before the action even accrued. Even under Caelum's version of events, UTRF did not learn of Columbia and Caelum's business relationship—and alleged misappropriation of trade secrets—until sometime in mid-2016. [Doc. 480-8 at 21–22]. Any lapse of time before then is irrelevant to the laches inquiry. Simply because this case involves a lengthy underlying factual history does not mean Caelum's laches defense succeeds.

Once again relying on the case's decades-long set of facts, Caelum contends that the lengthy history has contributed to lapses in memory on part of UTRF's witnesses. Caelum emphasizes that Dr. Debbie Smith showcased her lacking memory dozens of times in her deposition, and Dr. Solomon could not recall when he transferred the IND program to Columbia and Dr. Lentzsch. [*Id.* at 26]. Relying primarily on two cases, Caelum argues that Tennessee courts consistently deem impaired memory by witnesses sufficient to establish gross laches. [*Id.* at 24]. These two cases are plainly distinguishable, however. First, consider *Maverick Group Marketing, Inc. v. Worx Environmental Products, Ltd.*, No. 2:13-cv-2268, 2015 WL 8335153, at *8 (W.D.

12

Tenn. Dec. 8, 2015). There, the plaintiff asserted a breach of contract claim within the applicable statute of limitations, but one year before filing suit, one of the two "key players" in the relevant events died. *Id.* This witness's death, among other things, prejudiced the defendant's ability to defend. *Id.* This case, by contrast, involves far more than two "key players," and no critical witnesses passed away from the time UTRF's claims accrued to when it filed this lawsuit. Moreover, Caelum fails to elaborate on how Dr. Smith and Dr. Solomon's apparent lapses in memory prejudiced its ability to defend. Merely citing to lapses in memory or lost evidence, without explaining how those things prejudiced the ability to defend, is insufficient to demonstrate gross laches. *Riggan*, 1997 WL 675462, at *7 (affirming trial court's rejection of gross laches defense where the defendant did not explain how lost documents were relevant to the case or prejudiced his defense).

Caelum also cites the Tennessee Supreme Court's decision in *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.* to illustrate how lapses in witnesses' memories can satisfy the gross laches standard. [Doc. 480-8 at 24]. In that case, the Tennessee Supreme Court held that laches applied to bar the plaintiff's breach of contract claim. 715 S.W.2d at 42, 47. Underlying that holding was the fact that "*all* of the testimony given in this case [was] peppered with numerous lapses of memory concerning the details of these events." *Id.* at 45 (emphasis added). Caelum has not shown that a majority, let alone all, of the testimony in this case is overcome with lapses in memory. Citing to two depositions among the dozens that were taken in this case fails to render it analogous to the pervasive lapses of memory found in the *John P. Saad & Sons, Inc.* decision.

Caelum's arguments regarding witnesses' memories are more similar to those asserted in *Luna Law Group, PLLC v. Roberts*, No. M2021-00699-COA-R3-CV, 2022 WL 2961379 (Tenn. Ct. App. July 27, 2022). The Tennessee Court of Appeals affirmed the trial court's refusal to apply

gross laches where, despite several citations to deposition testimony demonstrating witnesses' supposed lack of memory, the defendant failed "to show how his defense was prejudiced by such failed recollection." *Id.* at *7. Further undermining the defendant's prejudice argument was the existence of "ample witness testimony" in the record that implicated the plaintiff's claims. *Id.* Caelum advances its arguments in a similar context, where two witnesses may have exhibited lapses of memory, but Caelum does not adequately explain the impact of those lapses, and the record unquestionably contains ample testimony and documents relating to UTRF's claims.

Caelum's final prejudice argument pertains to three documents that are not in the record: the 1999 Material Transfer Agreements ("MTAs") between the University of Tennessee and National Cancer Institute. [Doc. 480-8 at 26–27]. The MTAs supposedly denote the entities' ownership interests in the chimeric 11-1F4 antibody, an item largely at the center of this litigation. [*Id.* at 27]. UTRF evidently lost these MTAs, and Caelum claims that their absence prejudices its ability to defend against UTRF's claims of ownership in the chimeric 11-1F4 antibody. [*Id.*]. When UTRF lost the MTAs is critical. If UTRF lost them between the time its claims accrued and when it filed suit, that could suggest gross laches in light of the documents' apparent importance.

Caelum cites no evidence to show that UTRF lost the MTAs between the time its claims accrued sometime in late 2016 or early 2017 and when it ultimately filed this action. Conversely, UTRF cites an email from Dr. Smith, dated August 15, 2014, where she expressed that she could not locate Dr. Solomon's old MTA files. [Doc. 463-2 at 2]. This email came well before the accrual of UTRF's claims. Again, the time period relevant to laches is any delay that occurs between when a cause of action first ripens and when it is ultimately filed. *See Patton*, 8 F.3d at 347. Any delay and loss of evidence that takes place before the claim accrues is irrelevant to the laches analysis. Absent evidence suggesting UTRF lost the MTAs during the approximate three year period

14

between accrual and filing, gross laches cannot apply. Thus, Caelum's assertion that "the passage of thirty years" led UTRF to lose the MTAs misses the mark, and Caelum's laches defense is subject to dismissal.

### 4. Estoppel

Caelum next asserts estoppel as an affirmative defense. At its core, estoppel focuses on one's detrimental reliance in response to another's misrepresentation. *Beazley v. Turgeon*, 772 S.W.2d 53, 58 (Tenn. Ct. App. 1988) (citing *Church of Christ v. McDonald*, 171 S.W.2d 817, 821 (Tenn. 1943)). One who makes misrepresentations will be estopped from asserting claims against another who in good faith relies on the misrepresentations to their detriment. *Id.* The misrepresentations need not be written or spoken to give rise to an estoppel claim. *Hardison Law Firm, P.C. v. Howell*, No. W2002-01945-COA-R3-CV, 2003 WL 22718427, at *17 (Tenn. Ct. App. Nov. 17, 2003). Instead, Tennessee law recognizes estoppel by silence, but it will apply only in circumstances where the party to be estopped had "not only an opportunity to speak or act, but also an obligation or duty to do so." *Id.* (citing *State ex rel. Grant v. Prograis*, 979 S.W.2d 594, 601 (Tenn. Ct. App. 1997)).

Caelum's estoppel defense fails because Caelum does not establish any duty or obligation UTRF had to speak. Caelum contends that UTRF's silence during their contract negotiations created a false sense of security, but Caelum offers no argument as to how UTRF had an obligation to speak up regarding its ownership interest in the 11-1F4 antibody. [Doc. 480-8 at 28]. Tennessee courts seldom elaborate on when a duty to speak arises in the context of an estoppel defense. The few cases that discuss the concept, however, suggest that the obligation arises when a fiduciary relationship exists, such as between an attorney and client or physician and patient. *See, e.g., Grimsley v. Kittrell*, No. M2005-02452-COA-R3-CV, 2006 WL 2846298, at *4–5 (Tenn. Ct. App.

15

Sept. 29, 2006) (finding estoppel by silence inapplicable where the defendant's attorney had no duty to advise the plaintiff's attorney of potential res judicata issues because the defendant's attorney's duty was to his client, not to the plaintiff's attorney). Cases involving fraudulent concealment, albeit different from estoppel, reiterate this view. *Macon Cnty. Livestock Mkt., Inc. v. Ky. State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986) (explaining that liability for fraudulent concealment arises only where the party has a duty to disclose, such as when a fiduciary or confidential relationship exists). The Court does not detect any fiduciary relationship between UTRF and Caelum as to impose an obligation on UTRF to speak, and Caelum makes no argument to the contrary. This deficiency is fatal to Caelum's estoppel defense.

### 5. Acquiescence

Caelum's acquiescence defense is exceedingly similar to estoppel. *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 823–24 (Tenn. Ct. App. 2011) (citations omitted). One notable difference between the two defenses, however, is that nothing in the limited case law addressing acquiescence specifically imposes a duty to speak, as is the case with estoppel by silence. "An acquiescence to a transaction is a person's tacit or passive acceptance, or an implied consent to act." *Id.* at 823.[4] The doctrine applies where one "knows or ought to know that he or she is entitled to enforce his or her right to impeach a transaction and neglects to do so for such a time as would imply that he or she intended to waive or abandon his or her right." *Id.* at 824.

Caelum's acquiescence defense hinges on UTRF's failure to raise objections or assert its alleged interest in the 11-1F4 antibody during its confidentiality agreement negotiations with Caelum, despite knowing of Caelum and Columbia's licensing deal. [Doc. 480-8 at 29]. Citing to

---

[4] UTRF chastises Caelum for relying only on federal trademark cases to support its argument that implied assurances and passive conduct may suffice to support an acquiescence defense. [Doc. 466 at 28]. As this language from *Crye-Leike* indicates, a non-trademark, published decision from the Tennessee Court of Appeals, implied assurances and passive conduct can amount to acquiescence.

16

several email exchanges involving Caelum representative Michael Spector, UTRF argues that Caelum knew UTRF was frustrated with being excluded from the licensing deal with Columbia. [Doc. 466 at 29]. Many of these emails were sent months after UTRF negotiated and entered into its confidentiality agreement with Caelum in March 2017. [Docs. 463-4, 463-5, 463-6]. The timing of the emails therefore fails to demonstrate Caelum's knowledge of UTRF's grievances, whatever they may have been, at the time the confidentiality agreement was negotiated and executed.

Regardless of the emails' timing, none of them entitle UTRF to summary judgment on Caelum's defense that UTRF acquiesced to its licensed rights in the 11-1F4 antibody. In none of the emails does Spector state that UTRF informed him of its ownership rights in the 11-1F4 antibody. Spector even claims the opposite; he avers that UTRF never asserted any ownership interests during negotiations for the confidentiality agreement. [Doc. 375 at ¶ 50]. The emails UTRF cites—in showing Caelum was aware of UTRF's general displeasure—do not definitively demonstrate that UTRF informed Caelum of its ownership rights in the 11-1F4 antibody during the contract negotiations. That UTRF at some point expressed its frustration with being left out of the licensing deal does not necessarily equate to UTRF communicating to Caelum that it owned the 11-1F4 antibody. Considering the extent of UTRF's communications lack clarity and remain disputed, the Court declines to grant summary judgment on Caelum's affirmative defense of acquiescence.

### 6. Ratification

Caelum's final affirmative defense is ratification. Ratification occurs when one confirms or adopts another's actions after the fact. *Valley Fidelity Bank and Tr. Co. v. Cain P'ship*, 738 S.W.2d 638, 639–40 (Tenn. Ct. App. 1987) (citations omitted). "Silence can amount to ratification where a party with knowledge of the transaction fails for a reasonable time to protest or dissent."

*Id.* at 640 (citing *McClure v. Evartson*, 82 Tenn. 495, 501 (1884)). A party's actions, or lack thereof, cannot constitute ratification unless the party was "informed of the facts necessary to form an opinion." *Id.* (citations omitted). It is this last element—the extent to which UTRF knew of the relevant facts—which forms the basis of the parties' dispute.

UTRF contends that because it lacked knowledge of the facts necessary to form an opinion, Caelum's ratification defense fails. [Doc. 361 at 25]. UTRF bases this argument on the fact that it did not receive an unredacted copy of Columbia and Caelum's license agreement until after this litigation began. [*Id.*]. Caelum paints a different picture of UTRF's knowledge. Specifically, Caelum points to emails from UTRF's Dr. Stacey Patterson, wherein she recounted an email Caelum sent to UTRF explaining that it had "licensed the 11-1F4 antibody from Columbia as of January 1st of 2017." [Doc. 363-2 at 2]. Dr. Patterson also referred to Caelum's press release, where Caelum claimed it secured "worldwide license rights" in the 11-1F4 antibody. [*Id.*]. These emails, in Caelum's view, demonstrate that UTRF had sufficient knowledge to raise objections to the licensing deal. [Doc. 480-8 at 30].

Drawing reasonable inferences in Caelum's favor, as the Court must, UTRF is not entitled to summary judgment on Caelum's ratification defense. At the very least, UTRF knew of Caelum's claim that it had secured global license rights in the 11-1F4 antibody from Columbia. This knowledge could have provided UTRF with "the facts necessary to form an opinion" about the propriety of Caelum's license and general business activities. *Valley Fidelity Bank and Tr. Co.*, 738 S.W.2d at 640. After all, one of UTRF's central claims is that Columbia lacked authority to license rights in the 11-1F4 antibody to Caelum or anyone else. [Doc. 61 at ¶ 260, 269]. Caelum's claim that it acquired rights from Columbia could have provided UTRF with sufficient knowledge to object to the licensing deal as improper.

18

Notwithstanding the decision to deny summary judgment on this defense, the Court seriously questions whether ratification even applies to this case. Most, if not all, of the relevant Tennessee case law discusses ratification in the context of a principal-agent relationship. As the Tennessee Supreme Court has explained, ratification "occurs when one approves, adopts, or confirms a contract previously executed by another, *in his stead and for his benefit*, but without his authority." *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 270 (Tenn. 2001) (citations and internal quotation marks omitted) (emphasis added); *see also Harber v. Bank of Am., N.A.*, 274 S.W.3d 649, 655 (Tenn. Ct. App. 2008) (defining ratification as the "adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority to do so" (citations omitted)).

Tennessee courts invariably address ratification as an agency doctrine. The doctrine applies in situations where an agent acts outside its authority, but the principal later endorses the conduct after the fact. *Webber*, 49 S.W.3d at 270. That situation does not exist here. Neither UTRF nor Caelum suggests a principal-agent relationship existed between them, and it would defy logic to argue to the contrary. A central disagreement between the parties concerns the propriety and effect of Caelum's license agreement with Columbia. It cannot be that Caelum acted as UTRF's agent when it secured its licensing deal with Columbia, a deal UTRF did not benefit from and assails for its exclusionary effect. Some cases have deemed ratification inapplicable under similar circumstances. *See, e.g.*, *Bells Banking Co. v. Jackson Ctr., Inc.*, 938 S.W.2d 421, 427–28 (Tenn. Ct. App. 1996) (holding that ratification did not apply, in part, because the principal "in no way benefited" from the agent's actions and did not accept any benefits). Despite the Court's concerns regarding ratification's applicability to this case, neither party raises the issue, and the Court declines to issue a ruling based on arguments not asserted.

19

## IV.  CONCLUSION

UTRF's Motion for Summary Judgment [Doc. 359] is **GRANTED IN PART** and **DENIED IN PART**. Of Caelum's 23 affirmative defenses, only acquiescence and ratification survive summary judgment. Caelum's remaining affirmative defenses are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**