# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

UNIVERSITY OF TENNESSEE RESEARCH FOUNDATION,

    *Plaintiff*,

v.

CAELUM BIOSCIENCES, INC.,

    *Defendant*.

)
)
)
)
)
)
)
)
)
)
)

Case No. 3:19-cv-508

Judge Atchley

Magistrate Judge Poplin

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' motions in limine. Defendant Caelum Biosciences, Inc. ("Caelum") filed seven motions in limine. [Docs. 559, 561, 565, 566, 570, 572, 574]. Plaintiff University of Tennessee Research Foundation ("UTRF") filed four motions in limine, one of which has been resolved through a joint stipulation. [Docs. 549, 553, 556, 576]. At the final pretrial conference, the Court elicited oral argument from the parties, and these motions are now ripe for the Court's review.

### I. STANDARD OF REVIEW

Motions in limine are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (citation and internal quotation marks omitted). They are often asserted "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 41 n.2 (1984). A ruling on a motion in limine is preliminary in nature and may change depending on how the trial unfolds. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)).

## II. ANALYSIS

The parties filed eleven motions in limine. Some of the motions turn on questions of relevance, while others involve discrete legal issues. For purposes of clarity, the Court will address each motion in limine separately and in the order in which they were filed.

### A. Caelum's Motion in Limine No. 1 [Doc. 559]

Caelum's first motion in limine seeks to preclude Dr. Alan Solomon from testifying as to how he would use any proceeds he receives from a judgment entered in UTRF's favor. [Doc. 559]. When asked how he would spend any money received, Dr. Solomon testified in his deposition that he would donate the proceeds to the University of Tennessee ("UT") and the United States Holocaust Memorial Museum. [Doc. 560-2 at 3–4]. Caelum contends that this testimony is irrelevant and prejudicial. [Doc. 560 at 3]. UTRF disagrees. Specifically, UTRF argues that this evidence would rehabilitate Dr. Solomon's credibility if Caelum decides to attack his financial interest in the case. [Doc. 600 at 2].

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. The fact of consequence here pertains to Dr. Solomon's potential financial interest in this litigation. It is well-settled that a witness's biases, including his financial interests, constitute relevant evidence. *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *Nat'l Jockey Club v. Ganassi*, No. 04-3743, 2009 WL 2177217, at *2 (N.D. Ill. July 21, 2009) (explaining that a witness's direct financial interest in the case's outcome proves relevant to credibility).

Caelum may, as UTRF acknowledges, attack Dr. Solomon's credibility. The more pressing question here, however, is how UTRF may rehabilitate Dr. Solomon's credibility once it is attacked. UTRF asserts that testimony from Dr. Solomon regarding his charitable intentions

2

negates notions of bias and rehabilitates his credibility. [Doc. 600 at 3–4]. The Court disagrees. How Dr. Solomon intends to spend any proceeds he receives does not negate his potential financial interest in this litigation. Regardless of how Dr. Solomon ultimately spends any proceeds, he would still be receiving the proceeds and spending them in accordance with his preferences. To be sure, ample methods exist for UTRF to challenge Caelum's accusations of bias. Dr. Solomon could, for example, testify that any potential financial interest he has in no way affects his testimony.

Although the Court is excluding evidence of Dr. Solomon's charitable intentions, the Court reiterates the preliminary nature of this ruling. If Caelum chooses to attack Dr. Solomon's alleged financial interest, Caelum could open the door to exploration of Dr. Solomon's charitable intentions, depending on how its questions are phrased. Merely asking Dr. Solomon whether he has a financial interest in this litigation will not open that door, however. In any event, Caelum's Motion in Limine No. 1 [Doc. 559] is **GRANTED**. Dr. Solomon is precluded from testifying as to his plans to donate any proceeds he receives to charitable causes.

### B.  Caelum's Motion in Limine No. 2 [Doc. 561]

In its second motion in limine, Caelum requests exclusion of evidence relating to or referencing its parent company, AstraZeneca. [Doc. 561]. In July 2021, AstraZeneca acquired Caelum through Alexion's acquisition of Caelum. [Doc. 562 at 3]. Caelum emphasizes that the AstraZeneca acquisition came years after Caelum's alleged wrongdoings that are at issue in this case. [*Id.* at 2]. Considering AstraZeneca's size and prominence, Caelum argues that any references to the company would prove irrelevant and unduly prejudicial. [*Id.*].

UTRF takes a different view. According to UTRF, some references to AstraZeneca prove relevant to demonstrating the reliability of certain expert opinions, specifically those of damages expert Dr. DeForest McDuff. [Doc. 604 at 3–4]. The Court notes that Caelum has objected to Judge

3

Poplin's *Daubert* order addressing Dr. McDuff's opinions, and that objection remains pending. [Doc. 543]. A final ruling on this motion would therefore prove inappropriate in some respects pending the Court's resolution of Caelum's objection. Nonetheless, UTRF connects Dr. McDuff's damages opinions to AstraZeneca in the following manner: Alexion prepared financial projections pertaining to Caelum, and AstraZeneca relied on those projections to authorize Alexion's acquisition of Caelum. [Doc. 604 at 3–4]. Dr. McDuff, in turn, looks to Alexion's financial projections, and AstraZeneca's purported reliance on them, to inform his damages opinions on the trade secrets claim. [*Id.*].

The relevance of AstraZeneca to Dr. McDuff's opinions, based on UTRF's account, ultimately depends on whether AstraZeneca actually relied on Alexion's projections. Assuming Dr. McDuff is permitted to testify, the Court struggles to see how references to AstraZeneca would prove relevant absent a showing of reliance. Regardless of whether UTRF demonstrates reliance, UTRF concedes that references to AstraZeneca's "size, market capitalization, global revenues, and involvement in unrelated litigation" would be irrelevant. [Doc. 604 at 2]. Counsel for UTRF also agreed at the final pretrial conference that references to AstraZeneca would only prove relevant in the damages phase of a bifurcated trial.[1]

Considering UTRF's concessions, Caelum's Motion in Limine No. 2 [Doc. 561] is **GRANTED IN PART**. UTRF is precluded from referencing AstraZeneca's size, market capitalization, global revenues, and involvement in unrelated litigation. Moreover, UTRF is precluded from alluding to AstraZeneca in the trial's liability phase. The Court will **DEFER RULING** on whether AstraZeneca may be referenced during the damages phase of the trial. This ruling necessarily depends on Caelum's pending objection and whether UTRF establishes reliance.

---

[1] As the Court will explain in a later section of this opinion, the trial of this matter will be bifurcated into a liability and damages phase, so this concession is relevant to the Court's ruling on this motion.

4

### C. Caelum's Motion in Limine No. 3 [Doc. 565]

Caelum's third motion in limine seeks to preclude UTRF from presenting evidence or arguing that Caelum subjected Dr. Solomon to "elder abuse." [Doc. 565]. Caelum characterizes this accusation as inflammatory and prejudicial. [Doc. 564 at 1]. In response, UTRF agrees not to use the term "elder abuse" at trial, but it contends that the relief Caelum seeks is overly broad. [Doc. 597 at 2]. Specifically, UTRF argues that if Caelum offers evidence regarding its purported favorable treatment of Dr. Solomon, UTRF should be permitted to rebut Caelum's characterization with evidence of its own. [*Id.*].

Caelum's briefing suggests it intends to put its treatment of Dr. Solomon in issue—namely, that it allowed Dr. Solomon to join its scientific advisory board and compensated him in that role. [Doc. 564 at 4]. At the final pretrial conference, counsel for Caelum argued that its treatment of Dr. Solomon is relevant for credibility purposes. Notwithstanding Caelum's apparent plans to offer evidence of its favorable treatment of Dr. Solomon, Caelum appears to argue, albeit implicitly, that UTRF cannot rebut this characterization because it has presented no evidence to suggest Dr. Solomon was treated poorly. [Doc. 622 at 4]. But Dr. Solomon's own testimony could provide evidence to counter Caelum's account. Dr. Solomon may disagree with the notion that Caelum treated him favorably. If Caelum presents evidence regarding its treatment of Dr. Solomon, UTRF may rebut Caelum's portrayal, provided it does not use the term "elder abuse." Accordingly, Caelum's Motion in Limine No. 3 [Doc. 565] is **GRANTED IN PART**.

### D. Caelum's Motion in Limine No. 4 [Doc. 566]

For its fourth motion in limine, Caelum seeks to prevent UTRF's designated rebuttal experts—Dr. Andrew Bush, Dr. David W. Wood, and Dr. Glenn D. Prestwich—from testifying in UTRF's case-in-chief. [Doc. 566]. Caelum also argues that UTRF's rebuttal experts should be

5

precluded from testifying in rebuttal to the extent they fail to offer "real" rebuttal testimony. [*Id.*]. This motion thus requires the Court to address two distinct issues: first, whether UTRF's rebuttal experts should be permitted to testify in UTRF's case-in-chief, and second, whether UTRF's rebuttal experts should be permitted to testify in rebuttal.

### 1. Case-in-Chief Testimony

In its response in opposition to Caelum's motion, UTRF conceded that its rebuttal experts would only testify to rebut Dr. Gehlsen's opinions and not in its case-in-chief. [Doc. 599 at 4]. Citing Caelum's refusal to stipulate to the admissibility and authenticity of many exhibits, however, UTRF made a new request in its trial brief that it be permitted to call Dr. Bush and Dr. Prestwich to testify in its case-in-chief. [Doc. 642 at 2]. The Court will permit both experts to testify in UTRF's case-in-chief.

This matter has seen multiple scheduling orders entered and later amended. Relevant here, the Court's then-operative scheduling orders required UTRF to disclose its affirmative experts on or before January 24, 2023, and UTRF's rebuttal experts had to be disclosed on or before May 4, 2023. [Doc. 181 at 2; Doc. 257 at 1]. UTRF timely disclosed its rebuttal experts on May 4, 2023, but UTRF acknowledges that this disclosure came well beyond the January 4, 2023, deadline to disclose affirmative expert testimony. [Doc. 642 at 2]. Because UTRF now seeks to offer untimely disclosed expert testimony in its case-in-chief, the Court must determine whether UTRF's failure to comply with the applicable deadline is substantially justified or harmless.

Federal Rule of Civil Procedure 26(a)(2)(D) requires parties to make expert disclosures "at the times and in the sequence that the court orders." Where, as here, a party fails to provide timely Rule 26 expert disclosures, "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P.

37(c)(1). The Sixth Circuit relies on a five-factor test—the *Howe* factors—to determine whether a party's untimely disclosure is "substantially justified" or "harmless." *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015). The five factors are as follows:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014). "District courts have broad discretion in applying these factors and need not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citations and internal quotation marks omitted). And the goal of applying these factors is to separate "honest, harmless mistakes from the type of underhanded gamesmanship that warrants the harsh remedy of exclusion." *Id.* (citations and internal quotation marks omitted).

*Surprise to Caelum*. The first *Howe* factor considers the surprise Caelum would experience if UTRF's untimely disclosed experts testified in its case-in-chief. To be sure, trial is less than two weeks away, and testimony from Dr. Bush and Dr. Prestwich in UTRF's case-in-chief may necessitate some adjustments to Caelum's trial strategy. But Caelum received their expert reports more than a year ago and was able to conduct depositions to explore the contours of their opinions. [Doc. 642 at 7 n.2]. The scope of Dr. Bush and Dr. Prestwich's testimony thus poses no mystery to Caelum. In these circumstances, where Caelum has known of Dr. Bush and Dr. Prestwich's opinions for a lengthy period and was able to explore them via depositions, the Court concludes that permitting their testimony in UTRF's case-in-chief would not cause surprise to Caelum. *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2022 WL 279857, at \*8–9 (N.D. Ohio Jan. 31, 2022) (finding no surprise to movant where the information in belatedly disclosed declarations was largely identical to information it was provided with months earlier); *Novovic v.*

*Greyhound Lines, Inc.*, No. 2:09-cv-753, 2012 WL 252124, at *5 (S.D. Ohio Jan. 26, 2012) (holding that the plaintiff suffered no prejudice despite the defendant's belated disclosure of an affirmative expert because the plaintiff previously deposed the expert).

*Ability to Cure Surprise*. The second *Howe* factor concerns whether Caelum can cure the surprise it would experience if Dr. Bush and Dr. Prestwich testified in UTRF's case-in-chief. Because the Court already characterized this testimony as unsurprising, there is necessarily no surprise to cure, and this factor also favors permitting Dr. Bush and Dr. Prestwich to testify. The point remains that these experts' opinions were disclosed nearly sixteen months ago, and Caelum was able to conduct depositions to evaluate their opinions. It's not as if discovery must be reopened to allow Caelum an opportunity to explore these expert opinions. *Cf. Int'l Unions, Sec. Police and Fire Pros. of Am. v. Maritas*, No. 2:19-cv-10743, 2023 WL 2711626, at *4 (E.D. Mich. Mar. 30, 2023) (finding that the plaintiffs could cure the surprise only if discovery were reopened, which would prove inequitable in the later stages of litigation). Even to the extent Dr. Bush and Dr. Prestwich's case-in-chief testimony would cause surprise, Caelum can cure it through cross-examination at trial. *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019) (citing *Howe*, 801 F.3d at 749). Moreover, at the final pretrial conference, counsel for Caelum expressed a desire to file a rebuttal report if Dr. Bush and Dr. Prestwich are permitted to testify in UTRF's case-in-chief. Considering UTRF's counsel did not object to this request, the Court sees this as another way for Caelum to cure any surprise.

*Disruption to Trial*. The third *Howe* factor assesses what disruption to trial would result if UTRF's untimely disclosed experts testified in its case-in-chief. Courts will often deem an untimely disclosed witness's testimony to cause disruption where it necessitates reopening discovery and continuing the trial. *Venture Express, Inc. v. Vanguard Nat'l Trailer Corp.*, 585 F.

8

Supp. 3d 1060, 1072 (M.D. Tenn. 2022) (holding that introduction of the evidence would disrupt the trial because it would require reopening discovery and resetting the trial date); *Global Force Ent., Inc. v. Anthem Wrestling Exhibitions, LLC*, 468 F. Supp. 3d 969, 973 (M.D. Tenn. 2020) (finding that an untimely disclosed witness's testimony would cause disruption to trial because the trial was scheduled to begin in three days and the defendant could not depose the witness absent a continuance). Permitting Dr. Bush and Dr. Prestwich to testify in UTRF's case-in-chief would not disrupt the trial for the reasons already discussed. That is, Caelum deposed both experts long ago, which renders additional discovery unnecessary. Dr. Bush and Dr. Prestwich's case-in-chief testimony does not prevent the trial from proceeding as scheduled.

*Importance of the Evidence*. The fourth *Howe* factor considers the importance of the evidence potentially subject to exclusion—in this case, Dr. Bush and Dr. Prestwich's testimony. Courts often observe that "this factor can cut both ways." *Bisig*, 940 F.3d at 220. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Id.* (citation and internal quotation marks omitted). Neither party disputes that Dr. Bush and Dr. Prestwich's testimony would prove important at trial. Indeed, both experts will offer testimony directly relevant to UTRF's trade secrets claim. [Doc. 567 at 6; Doc. 599 at 7–10]. The importance of their testimony may render UTRF's untimely disclosure more problematic, but the preference for resolving trials on the merits simultaneously counsels against exclusion. *Presidio, Inc. v. People Driven Tech., Inc.*, No. 2:21-cv-5779, 2023 WL 5162657, at *4 (S.D. Ohio Aug. 11, 2023) (citations omitted). On balance, the Court finds this factor mostly neutral.

*Explanation for Untimeliness*. The fifth and final *Howe* factor examines UTRF's justification for its failure to timely disclose Dr. Bush and Dr. Prestwich as affirmative experts. UTRF acknowledges that Dr. Bush and Dr. Prestwich were not timely disclosed as affirmative

experts. [Doc. 642 at 2]. Beyond referencing Caelum's numerous authenticity and admissibility objections to exhibits, UTRF does not offer a particularly compelling explanation for its failure to comply with the Court's expert disclosure deadlines. Absent any persuasive justification, this factor supports exclusion of Dr. Bush and Dr. Prestwich's testimony. *Trapp v. Fed. Express Corp.*, 647 F. Supp. 3d 567, 570 (E.D. Mich. 2022) (deeming *Howe*'s fifth factor to favor exclusion of the evidence where the plaintiff offered no explanation for his failure to disclose).

Upon considering the *Howe* factors, the first, second, and third support permitting Dr. Bush and Dr. Prestwich's testimony, the fourth is neutral, and the fifth favors their exclusion. Accordingly, UTRF's failure to timely disclose Dr. Bush and Dr. Prestwich as affirmative experts was substantially justified or harmless, and their testimony will be permitted as part of UTRF's case-in-chief.

### 2. Rebuttal Testimony

In addition to Dr. Bush and Dr. Prestwich, UTRF disclosed Dr. David W. Wood as a rebuttal expert. [Doc. 567 at 2]. UTRF does not seek to elicit testimony from Dr. Wood in its case-in-chief. [Doc. 642 at 2]. Thus, the question for the Court is whether Dr. Wood may testify in rebuttal to refute Dr. Gehlsen's opinions. To answer this question, the Court must decide whether Dr. Wood's opinions constitute "real" rebuttal evidence.

Whether evidence qualifies as "real" rebuttal is "not clear cut." *Taylor v. Brandon*, No. 3:14-cv-588, 2018 WL 3581142, at *2 (W.D. Ky. Jan. 30, 2018). Nonetheless, simply because evidence "might have been offered in chief does not preclude its admission in rebuttal." *Toth v. Grand Turk R.R.*, 306 F.3d 335, 345 (6th Cir. 2002) (quoting *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981)). The Sixth Circuit's decision in *Toth* proves instructive on this point. There, the plaintiff claimed injury from a railroad car's defective lever. *Id.* at 339. The plaintiff testified

in his case-in-chief about the accident and his observations of the lever's defectiveness. *Id.* at 341,

346. In the defendant's case-in-chief, one of its employees testified that the railyard's robust

inspection program would have discovered the defective lever. *Id.* The plaintiff sought to introduce

rebuttal testimony from another employee who viewed the inspection program as less effective

and less likely to discover the defect. *Id.* at 346. The district court excluded this rebuttal testimony

because it could have been offered in the plaintiff's case-in-chief, but the Sixth Circuit deemed

exclusion on that ground to be erroneous. *Id.* at 346–47.

In taking issue with the district court's exclusion of evidence, the Sixth Circuit focused on

the plaintiff's required proof in his case-in-chief. Namely, "[a]lthough evidence concerning

deficiencies in the railroad's inspection practices would have been relevant to prove the existence

of a defect, it was not necessary for the plaintiff to pursue this theory in his case-in-chief." *Id.* at

346. Nothing prevented plaintiff from instead relying "on his own direct account of the accident

and his own observation of the defect" in his case-in-chief. *Id.* For these reasons, the district court

erred when it prevented the plaintiff's rebuttal witness from testifying. *Id.*

UTRF's rebuttal expert, Dr. Wood, states in his expert report that his goal is to analyze the

opinions of Caelum's expert, Dr. Gehlsen. [Doc. 567-3 at 3]. Dr. Wood disagrees with Dr.

Gehlsen's opinions that UTRF's alleged trade secrets are public knowledge and that UTRF failed

to protect its alleged trade secrets. [*Id.* at 3–4]. At trial, UTRF intends to elicit testimony from Dr.

Solomon and Dr. Wall in its case-in-chief regarding the alleged trade secrets' value and efforts

made to preserve their secrecy. [Doc. 599 at 7 n.2]. Caelum cites no case law to suggest UTRF

must rely on expert witnesses in its case-in-chief to satisfy these elements. Just as the plaintiff in

*Toth* could rely on his own observations to prove a defect in his case-in-chief, UTRF can depend

on Dr. Solomon and Dr. Wall's testimony in its case-in-chief in lieu of Dr. Wood's, even though

his testimony would prove relevant in satisfying certain elements of the trade secrets claim. Consequently, the Court concludes, at this stage, that Dr. Wood may testify as a rebuttal witness, provided Dr. Gehlsen testifies in Caelum's case-in-chief.

Notwithstanding the foregoing, the Court may revisit its ruling as to Dr. Wood depending on the evidence presented in UTRF's case-in-chief. The Court notes that Dr. Wood's opinions appear to overlap considerably with those of Dr. Prestwich and Dr. Bush. Both Dr. Wood and Dr. Prestwich, for example, disagree with Dr. Gehlsen's opinions regarding the alleged trade secrets' public availability and UTRF's efforts to protect their secrecy. [*Compare* Doc. 567-3 at 3–4, *with* Doc. 569-2 at 9–11]. Evidence is only "real" rebuttal when it "was not fairly and adequately presented to the trier of fact before the defendant's case-in-chief." *Toth*, 306 F.3d at 345 (quoting *Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987)). And the Sixth Circuit has affirmed the exclusion of proffered rebuttal testimony where "its substance had already been presented to the jury through direct and cross examination of other witnesses." *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 701 (6th Cir. 2001). The substance of Dr. Wood's testimony may be presented to the jury through Dr. Bush and Dr. Prestwich's case-in-chief testimony. If this proves true, Dr. Wood may be precluded from testifying in rebuttal.

Caelum's Motion in Limine No. 4 [Doc. 566] is **DENIED**. Dr. Bush and Dr. Prestwich may testify in UTRF's case-in-chief. Dr. Wood may be permitted to testify in rebuttal, but the Court's ultimate ruling on his testimony will depend on UTRF's case-in-chief evidence.

### E. Caelum's Motion in Limine No. 5 [Doc. 570]

Caelum's fifth motion in limine seeks to preclude UTRF from presenting evidence regarding Alexion's financial projections and money paid to Caelum's shareholders. [Doc. 570]. The Court notes that Caelum's arguments in this motion substantially overlap with its pending

12

objection to Judge Poplin's *Daubert* order addressing Dr. McDuff's opinions. Caelum contends that this motion does not simply rehash its objection to Judge Poplin's ruling because this motion seeks "to exclude reliance on the projections for any purpose, not just for Dr. McDuff's calculations." [Doc. 624 at 3]. Even if Caelum is correct, a ruling on this motion would prove inappropriate at this time given that the objection to Judge Poplin's order remains pending. The Court will therefore **DEFER RULING** on Caelum's Motion in Limine No. 5 [Doc. 570].

### F. Caelum's Motion in Limine No. 6 [Doc. 572]

Caelum's sixth motion in limine is not really a motion in limine. Instead, it is a motion that seeks to increase the length of trial and bifurcate the issues of liability and damages. [Doc. 572]. The Court already addressed the length of trial at the final pretrial conference. The Court found Caelum's arguments persuasive and has allocated seven days for the trial of this matter.

That leaves bifurcation. Federal Rule of Civil Procedure 42(b) permits the Court to bifurcate a trial to promote convenience, avoid prejudice, and economize the proceedings. The decision to bifurcate is a matter of discretion, and the district court may consider factors such as "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997) (citing *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982)). "Bifurcation is the exception to the general rule that disputes should be resolved in a single proceeding and should be ordered only in exceptional cases." *EEOC v. Supreme Staffing, LLC*, No. 2:22-cv-2668, 2024 WL 1159288, at *2 (W.D. Tenn. Mar. 18, 2024) (quoting *Woods v. State Farm Fire & Cas. Co.*, No. 2:09-cv-482, 2010 WL 1032018, at *1 (S.D. Ohio Mar. 16, 2010)).

UTRF emphasizes this last point—that bifurcation is the exception, not the rule. [Doc. 601 at 11]. But this case, in many ways, is the exception. The facts of this case span more than thirty

years and involve a myriad of contracts, institutions, and scientific terminology. One look at the parties' proposed verdict forms underscores the considerable task left for the jury, even when confined to questions of liability. The jury will have to decide whether UTRF's 34 alleged trade secrets are in fact trade secrets and whether Caelum misappropriated them. Answering these questions will prove difficult enough without hearing evidence of damages; the jury will have to process the case's lengthy and dense factual history to make liability determinations as to each of the 34 alleged trade secrets.

UTRF's damages evidence may prove even more complicated than its theories supporting liability. If permitted to testify, Dr. McDuff will essentially provide a formula to the jury to calculate UTRF's damages, and the inputs to this formula will depend on the jury's factual findings. [Doc. 531 at 27]. For example, if the jury concludes that Caelum misappropriated ten trade secrets, and that Caelum saved one year's worth of expenses from the misappropriation, Dr. McDuff will explain to the jury what damages result from those inputs. [*Id.*]. As counsel for UTRF indicated at the final pretrial conference, Dr. McDuff could present his formula to the jury while it also considers questions of liability, and his analysis would remain the same whether the trial is bifurcated or not. Even so, the Court concludes that Dr. McDuff's damages theories will be more digestible to the jury when presented after the jury renders findings of liability, if any. With knowledge of the jury's liability findings, Dr. McDuff can specifically tailor his testimony in the damages phase based on the jury's prior determinations. This trial structure, with separate phases for liability and damages, will minimize juror confusion and supports bifurcation.

Beyond reducing juror confusion, the Court concludes that bifurcation would also economize the proceedings and potentially shorten the length of trial. Caelum points out that damages testimony would prove unnecessary if the jury finds no liability. [Doc. 573 at 8]. UTRF

takes issue with this argument, claiming that if adopted, it would transform bifurcation into the rule rather than the exception. [Doc. 601 at 15]. Moreover, UTRF emphasizes that because it must demonstrate the economic value of its alleged trade secrets to establish liability, evidence relevant to liability and damages necessarily overlaps. [*Id.* at 13]. Evidence pertaining to liability and damages, to be sure, may overlap in some respects and need to be presented twice. Still, the potential of a shortened trial following a defense verdict on liability can provide support for bifurcation. *In re Beverly Hills Fire Litig.*, 695 F.2d at 216–17 (affirming district court's decision to bifurcate trial on issue of causation because "extensive and expensive" proof regarding liability and damages "might be mooted by an adverse finding on the causation issue").

Finally, the Court does not detect any prejudice that UTRF would suffer from bifurcation. Even with a bifurcated trial, UTRF will still be permitted to present its damages theories, to the extent they are deemed admissible. Its presentation of evidence solely relevant to damages will simply come following a jury finding of liability. To minimize juror confusion and promote judicial economy, the Court finds that bifurcation of the trial into separate phases for liability and damages proves appropriate in this case. Caelum's Motion in Limine No. 6 [Doc. 572] is **GRANTED**.

### G. Caelum's Motion in Limine No. 7 [Doc. 574]

Caelum's seventh and final motion in limine requests that Judge Poplin's *Daubert* rulings as to its experts be applied equally to UTRF's experts. [Doc. 574]. Judge Poplin issued several orders, following UTRF *Daubert* motions, that preclude Caelum's experts from offering impermissible legal conclusions and echoing the precise language of the Tennessee Uniform Trade Secrets Act. [Doc. 575 at 3]. Because Caelum failed to file any *Daubert* motions advancing these arguments, UTRF characterizes Caelum's motion as untimely and improper. [Doc. 596 at 3].

The Court intends to follow the Federal Rules of Evidence at trial and expects the parties to do the same. Clearly, UTRF's experts will not be permitted to testify using the same legal conclusions Caelum's experts have been precluded from offering. Counsel for UTRF expressed concerns at the final pretrial conference regarding the workability of an order granting Caelum's instant motion. That concern aside, the parties are well-aware of the contents of Judge Poplin's *Daubert* orders, and the Court sees no reason to not apply these rulings equally to both parties' experts. This pretrial ruling will streamline the trial and avoid the need for Caelum to raise objections the Court would obviously sustain. Despite the Court's disappointment that a motion of this nature could not be resolved between the parties beforehand, Caelum's Motion in Limine No. 7 [Doc. 574] is nonetheless **GRANTED**.

### H. UTRF's Motion in Limine No. 1 [Doc. 549]

Now turning to UTRF's motions in limine, its first seeks to prevent Caelum from referencing Columbia University's ("Columbia") status as a dismissed party or referring to UTRF's release agreement with Columbia. [Doc. 549]. UTRF contends that such evidence, if introduced, would be irrelevant and highly prejudicial. Caelum disagrees and argues that Columbia's conduct proves essential to this case's underlying factual history. [Doc. 608 at 2].

First up is Columbia's status as a dismissed party. The Court does not see any relevance in references to Columbia's status as a dismissed party. Courts often exclude references to dismissed defendants because such evidence lacks probative value. *See, e.g.*, *Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284, at *2 (E.D. Mich. July 15, 2021). Because Columbia's dismissal lacks relevance to UTRF's claims, this evidence is subject to exclusion.

UTRF's release agreement with Columbia presents a different question. Caelum entered into a license agreement with Columbia on January 1, 2017, and that agreement largely forms the

basis of UTRF's claim for misappropriation of trade secrets. Months after Caelum secured the license, and despite knowing of its existence, UTRF executed a release agreement with Columbia that relieved Columbia of all claims and liability arising from a breach of their Inter-Institutional Agreement ("IIA"). [Doc. 363-3]. The IIA, when effective, required UTRF and Columbia to maintain confidentiality of certain information, including some of UTRF's alleged trade secrets. [Doc. 589 at 21]. Columbia presumably breached the IIA when it disclosed confidential information to Caelum as part of the license agreement, yet UTRF chose to release Columbia from liability. UTRF's decision to execute the release could prove relevant to showing, among other things, a failure to exercise reasonable efforts to maintain the secrecy of its trade secrets.[2]

UTRF's Motion in Limine No. 1 [Doc. 549] is **GRANTED IN PART** and **DENIED IN PART**. Caelum may not introduce evidence or make references to the fact that Columbia has been dismissed from this lawsuit. On the other hand, Caelum may refer to and introduce into evidence UTRF's release because it is relevant and not unfairly prejudicial.

### I. UTRF's Motion in Limine No. 2 [Doc. 553]

UTRF's second motion in limine requests that Caelum be precluded from arguing at trial that UTRF spoliated certain evidence, specifically the Material Transfer Agreements ("MTAs") that were lost. [Doc. 553]. Caelum does not oppose UTRF's motion to the extent it seeks to exclude suggestions of spoliation. [Doc. 609 at 2, 4]. Considering this concession, the Court deems this motion resolved. Caelum does, however, indicate opposition to UTRF's motion insofar as it requests exclusion of the lost MTAs altogether. [*Id.* at 2]. UTRF does characterize the missing MTAs as irrelevant to its claims, but the specific request UTRF makes in its motion is to preclude

---

[2] UTRF emphasizes that Columbia and Caelum's license requires them both to maintain confidentiality of exchanged information, which means Columbia did not "give away" the trade secrets. [Doc. 630 at 7–8]. Simply because the license may require Caelum to maintain confidentiality does not change the fact that Columbia provided UTRF's alleged trade secrets to third-party Caelum in the first instance, and UTRF thereafter released Columbia from liability.

Caelum from suggesting spoliation occurred. [Doc. 555 at 6–7]. As a consequence, the Court sees no reason to address the broader issue of whether the missing MTAs constitute relevant evidence, though the Court notes that UTRF's inability to locate them would likely prove relevant to what efforts were pursued to protect the alleged trade secrets. Regardless, UTRF's Motion in Limine No. 2 [Doc. 553] is **GRANTED**, and Caelum may not argue at trial that UTRF spoliated evidence.

### J. UTRF's Motion in Limine No. 3 [Doc. 556]

UTRF's third motion in limine seeks to preclude Caelum from presenting evidence regarding any legal advice its former parent company Fortress received in connection with its due diligence efforts. [Doc. 556]. Before securing the licensing deal with Columbia, Fortress conducted due diligence to investigate the propriety of the transaction. [Doc. 611 at 2]. Part of Fortress's due diligence included retaining outside counsel, which in turn provided a Freedom to Operate Report ("FTO Report"). [*Id.*]. UTRF requests exclusion of any references to the FTO Report or legal advice Fortress received, principally because Caelum has never disclosed the contents of the advice received on grounds of attorney-client privilege. [Doc. 557 at 2]. Allowing this evidence at trial would, in UTRF's view, permit Caelum to use the attorney-client privilege as a sword and a shield. [*Id.*].

Caelum partially stipulates to UTRF's motion insofar as it seeks to exclude introduction of privileged information. [Doc. 611 at 2]. Further, in its response brief and at the final pretrial conference, Caelum has agreed to limit the scope of the evidence it presents on this subject. Caelum agrees not to refer to the report it received as a FTO Report to avoid implying to the jury that it received favorable legal advice. Moreover, Caelum proposes that Michael Spector, who led Fortress's due diligence efforts, will only testify to the fact that it is standard practice to consult outside counsel, and he did so in this case.

18

Litigants may not use the attorney-client privilege as "a shield and a sword." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). The import of the rule is this: litigants cannot assert the privilege to shield the contents of communications but later rely on those same privileged communications "to make their case." *Id.* It is true that Caelum has not pled advice of counsel as an affirmative defense. But the ultimate question is whether Caelum has placed the advice of counsel in issue as part of its defense. *Raymond v. Renew Therapeutic Massage, Inc.*, No. 18-13760, 2022 WL 15800271, at *6 (E.D. Mich. Oct. 28, 2022) (explaining that "when clients testify about their reliance on legal advice, they put that legal advice "in issue" and thereby waive any attorney-client privilege regarding that subject") (citation omitted).

The Court appreciates Caelum's offers to narrow Spector's testimony, but even with the contemplated restrictions, the Court concludes that Caelum would be placing the advice of counsel in issue, despite having shielded the contents of that advice during discovery. A central issue in this case, as Caelum acknowledges, is whether it acquired UTRF's alleged trade secrets through improper means. [Doc. 611 at 3–4]. And UTRF's theory of liability rests on its view that Caelum committed theft of the trade secrets upon acquiring them from Columbia. Caelum, in endeavoring to rebut accusations of theft, plans to elicit testimony from Spector to show, *inter alia*, that he sought advice from counsel before proceeding with the licensing deal. The natural implication of this testimony—despite not revealing the contents of the advice—is that Caelum could not have stolen the trade secrets; it consulted with outside counsel before executing the license, and outside counsel assured that the deal was legally sound.

The facts of this case render it distinguishable from those Caelum cites. For example, in *Plate, LLC v. Elite Tactical Systems, LLC*, the district court, in rejecting the plaintiff's argument

19

that the defendants impermissibly advanced arguments pertaining to advice of counsel, concluded that the defendants had not based their arguments on the legal advice received or placed their attorney's legal opinions at issue. No. 3:18-cv-265, 2020 WL 5209303, at *8, *10 (E.D. Tenn. Sept. 1, 2020). By contrast, Spector's contemplated testimony would put advice of counsel in issue and render it part of Caelum's defense against allegations of theft. Though Caelum insists it will not reveal the contents of the legal advice it received, testimony from Spector indicating that he consulted with outside counsel would, in implying that outside counsel blessed the licensing deal, accomplish a similar result that would follow were Caelum to disclose the precise advice received. *See Cenveo Corp. v. S. Graphic Sys., Inc.*, No. 08-5521, 2010 WL 11537558, at *2 (D. Minn. Feb. 1, 2010) (finding that the plaintiff would be unfairly prejudiced by evidence that the defendants consulted an attorney before acting because of "the natural inference that a person who acts subsequent to a legal consultation does so within the boundaries of the law" and because the legality of the defendants' actions following the consultation were directly at issue).

The Court concludes that Spector's testimony, even when limited in scope, would permit Caelum to use the attorney-client privilege as a sword and a shield. As a result, UTRF's Motion in Limine No. 3 [Doc. 556] is **GRANTED**. Caelum may not elicit testimony or present evidence at trial referring to consultations with counsel during its due diligence efforts.

### K. UTRF's Motion in Limine No. 4 [Doc. 576]

In its fourth motion in limine, UTRF seeks to preclude Caelum from referring to Dr. Wall's former spouse and the circumstances surrounding the end of their marriage. [Doc. 576]. UTRF asserts that evidence on these topics, if presented, would be both irrelevant and unduly prejudicial. After UTRF filed this motion, the parties proposed a Joint Stipulation whereby they both agree not to present evidence relating to Dr. Wall's former spouse. [Doc. 580 at 2]. The parties also agree

not to present evidence referring to AL Amyloidosis as a "cancer." [*Id.*]. The Court approves of the parties' Joint Stipulation. Accordingly, UTRF's Motion in Limine No. 4 [Doc. 576] is **GRANTED**, as is the parties' Joint Stipulation [Doc. 580].

## III. CONCLUSION

The Court has carefully considered each of the parties' motions in limine. For purposes of clarity, the Court's rulings are summarized below:

- Caelum's Motion in Limine No. 1 [Doc. 559] is **GRANTED**. Dr. Solomon is precluded from testifying as to his plans to donate any proceeds received to charitable causes.

- Caelum's Motion in Limine No. 2 [Doc. 561] is **GRANTED IN PART**. UTRF is precluded from referencing AstraZeneca's size, market capitalization, global revenues, and involvement in unrelated litigation. Moreover, UTRF is precluded from alluding to AstraZeneca in the trial's liability phase. The Court will **DEFER RULING** on whether AstraZeneca may be referenced during the damages phase of the trial.

- Caelum's Motion in Limine No. 3 [Doc. 565] is **GRANTED IN PART**. UTRF may not use the term "elder abuse," but UTRF may present evidence to rebut Caelum's suggestions that it treated Dr. Solomon favorably.

- Caelum's Motion in Limine No. 4 [Doc. 566] is **DENIED**. Dr. Bush and Dr. Prestwich may testify in UTRF's case-in-chief. Dr. Wood may be permitted to testify in rebuttal, but the Court's ultimate ruling on his testimony will depend on UTRF's case-in-chief evidence.

- The Court **DEFERS RULING** on Caelum's Motion in Limine No. 5 [Doc. 570].

- Caelum's Motion in Limine No. 6 [Doc. 572] is **GRANTED**. The trial of this matter will be bifurcated into liability and damages phases.

- Caelum's Motion in Limine No. 7 [Doc. 574] is **GRANTED**. UTRF's experts are precluded from testifying as to the same legal conclusions Caelum's experts have been precluded from offering.

- UTRF's Motion in Limine No. 1 [Doc. 549] is **GRANTED IN PART** and **DENIED IN PART**. Caelum may not introduce evidence or make references to the fact that Columbia has been dismissed from this lawsuit, but it may refer to and introduce into evidence UTRF's release.

- UTRF's Motion in Limine No. 2 [Doc. 553] is **GRANTED**. Caelum may not argue at trial that UTRF spoliated evidence.

- UTRF's Motion in Limine No. 3 [Doc. 556] is **GRANTED**. Caelum may not elicit testimony or present evidence at trial referring to consultations with counsel during its due diligence efforts.

- UTRF's Motion in Limine No. 4 [Doc. 576] and the parties' Joint Stipulation [Doc. 580] are **GRANTED**. Neither party may present evidence relating to Dr. Wall's former spouse or referring to AL Amyloidosis as a "cancer."

**SO ORDERED.**

/s/ Charles E. Atchley, Jr.
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**